**Appeal No. 2013-1203**

# In The United States Court of Appeals For The Federal Circuit

➤━◀━▶━◀

UNITED STATES,

*Plaintiff-Appellee,*

—v.—

MILLENIUM DISTRIBUTION LUMBER CO. LTD.,

*Defendant-Appellant,*

—and—

XL SPECIALTY INSURANCE COMPANY

*Defendant-Appellant.*

Appeal from the United States Court of International Trade
in Court No. 06-00129, Judge Delissa A. Ridgway

## BRIEF OF PLAINTIFF-APPELLEE, UNITED STATES

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

AMY M. RUBIN
Acting Assistant Director
International Trade Field Office

AIMEE LEE
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9230 or 9253
*Attorneys for Plaintiff-Appellee*

*Of Counsel:*
CHRISTOPHER SHAW
Office of Assistant Chief Counsel
U.S. Customs and Border Protection

# TABLE OF CONTENTS

ISSUES PRESENTED……………………………………………………..1

STATEMENT OF THE CASE……………………………………………….2

    I.    Nature of the Case……………………………………………….2

    II.    Relevant Facts and Procedural History…………………………4

SUMMARY OF ARGUMENT……………………………………………….8

ARGUMENT………………………………………………………...11

    I.    STATEMENT OF STANDARD OF REVIEW……………………11

    II.    MILLENIUM'S FAILURE TO PRESENT EXPORT PERMITS BREACHED THE ENTRY BONDS………………………………12

        A.    Entry Bonds Ensure Compliance with Laws Governing Imports………………………………………………..12

        B.    Legal Precedent Does Not Support XL's Position…………...18

    III.    INTEREST WAS PROPERLY AWARDED IN THIS ACTION......22

        A.    Prejudgment Interest Is An Element Of Complete Compensation Calculated From The Date Of First Demand……………………………………………….22

        B.    XL Unjustly Withheld Payment After Proper Notification Of Liability……………………………………………...25

        C.    In Any Event, The Trial Court Properly Balanced The Equities……………………………………………….31

    IV.    EXHAUSTION IS NOT APPLICABLE IN THIS CASE…………33

        A.    Millenium Never Initiated Any Administrative Proceedings..34

B.    Even If A Petition Were Filed, Mitigation Proceedings Are
Not Mandatory Administrative Proceedings…………………39

CONCLUSION……………………………………………………………...49

## TABLE OF AUTHORITIES

### Cases

Billings v. United States,
232 U.S. 261 (1914)…………………………………………….....23, 32

City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,
515 U.S. 189 (1995)……………………………………..………19, 20, 28

Clearfield Trust Co. v. United States,
318 U.S. 363 (1943)……………………………………………………..24

Curtis v. Innerarity,
47 U.S. 146 (1848)…………………………………………..…23, 30

eBay, Inc. v. MercExchange, L.L.C.,
547 U.S. 388 (2006)…………………………………………………..26

Halperin Shipping Co., Inc. v. United States,
742 F. Supp. 1163 (1990)……………………………………….………44

Insurance Co. of N. America v. United States,
951 F.2d 1244 (Fed. Cir. 1991)…………………….……18, 19, 24, 27, 28

Lynteq, Inc. United States,
976 F.2d 693 (Fed. Cir. 1992)……………………………………..12

Millenium Lumber Distribution Ltd. v. United States,
31 CIT 575 (2007)…………………………………………………….6, 7

Millenium Lumber Distribution Ltd. v. United States,
558 F.3d 1326 (Fed. Cir. 2009)…………………………………………6, 7

Miller v. Robertson,
  266 U.S. 243 (1924)……………………………………………...23, 32

Pope Products v. United States,
  15 CIT 279 (1991)……………………………………………….44, 45

Premium Plus Partners, L.P. v. Goldman, Sachs & Co.,
  648 F.3d 533 (7th Cir. 2011)…………………………………….……29

Princess Cruises Inc. v. United States,
  397 F.3d 1358 (Fed. Cir. 2005)……………………..……...29, 30, 31, 32

Rodgers v. United States,
  332 U.S. 371 (1947)……………………………………………...30, 32

Royal Indemnity Co. v. United States,
  313 U.S. 289 (1941)……………………………………………...24, 28

United States v. Ataka America, Inc.,
  826 F. Supp. 495 (1993)……………………………....…..……….40, 42, 45

United States v. Bavarian Motors,
  4 CIT 83 (1982)…………………………………………………..44, 45

United States v. Cocoa Berkau,
  990 F.2d 610 (Fed. Cir. 1993)……………………….…14, 40, 41, 43, 45

United States v. Imperial Food Imports,
  834 F.2d 1013 (Fed. Cir. 1987)……………………..……24, 27, 30, 31

United States v. Millenium Lumber Distribution Co. Ltd.,
  899 F. Supp. 2d 1340 (Ct. Int'l Trade 2012)…………..7, 34, 38, 39, 43, 45

United States v. Reul,
  959 F.2d 1572 (Fed. Cir. 1992)………………………..12, 14, 22, 24, 31

United States v. Toshuku America, Inc.,
  879 F.2d 815 (Fed. Cir. 1989)……………………………………44, 45

United States v. Utex International, Inc.,
    857 F.2d 1408 (Fed. Cir. 1988)……………………………15, 20, 21, 44, 45

United States v. Washington Int'l Ins. Co. Surety for N&B Jewelry Corp.,
    177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001)………………………………26

Universal Elec. v. United States,
    112 F.3d 488 (Fed. Cir. 1997)………………………………………………..17

United States v. U.S. Fidelity & Guaranty Co.,
    236 U.S. 512 (1915) ………………………………………………….…24

West Virginia v. United States,
    479 U.S. 305 (1987)………………………………………….….23, 24, 32

## Statutes and Regulations

Harmonized Tariff Schedule of the United States

    Heading 4407……………………………………………….………5, 6, 7

    Heading 4418……………………………………………….………4, 5

28 U.S.C.    § 1581(a)……………………………………………….…………15

    § 1582(2)………………………………………………......2, 3, 15

    § 2415………………………………………………….39, 40, 42

    § 2415(a)………………………………………………....41, 43

    § 2637……………………………………………………………..39

    § 2637(d)…………………………………………..10, 11, 33, 34, 39, 44

19 U.S.C.    § 1514………………………………………………………..21

    § 1514(a)(3)…………………………………………………..45

    § 1623………………………………………………….....43, 46

§ 1623(c)...…………………………………………...2, *passim*

19 C.F.R.    § 12.140(a) (2001)……………………………………………21

Part 113………………………………………………………..12

§ 113.1…………………………………………………………12

§ 113.4(a)……………………………………………………….12

§ 113.62 (a)-(k) (2001)…………………………………...12, 13, 16

§ 113.62(a)-(l) (2013)……………………………………12, 13, 16

§ 113.62(a)(ii) (2013)…………………………………………..27

§ 113.62(k) (2001)…………………………………...13, 14, 21

§ 113.62 (l) (2013)…………………………………………..13

§ 113.62(l)(2) (2001)…………………………………………17

§ 113.62(l)(5) (2001)…………………………………………14

§ 113.62(m)(2) (2013)…………………………………………17

Part 172 (2001)………………………………………...11, *passim*

§ 172.1……………………………………………...10, 34, 35

§ 172.2(c)……………………………………………………35

§ 172.21……………………………………………36, 37, 46, 48

§ 172.3(b)………………………………………...…35, 46, 47

§ 172.3(e)……………………………………………….45, 46

§172.4…………………………………………………………35

**<u>Miscellaneous</u>**

*Black's Law Dictionary* 816 (7th ed. 1999)…………………………...…………..23

4 William Blackstone, *Commentaries*…………………………………………...…23

## STATEMENT PURSUANT TO RULE 47.5

(1)   There are no other appeals arising from the lower court decision that are the subject of this action now pending before this or any other court of appeals.

(2)   There are a number of other cases filed by appellee that are currently pending before this Court or the United States Court of International Trade which will be directly affected by the Court's decision in this appeal.  To the best of our knowledge, these include Appeal Nos. 2012-1462 and 2012-1473, *United States v. Great American Ins. Co. of NY*, in this Court, and the following cases pending in the U.S. Court of International Trade:

| Court No. | Case Name |
|---|---|
| 09-401 | United States v. American Home Assurance Co. |
| 09-403 | United States v. American Home Assurance Co. |
| 09-442 | United States v. American Home Assurance Co. |
| 09-491 | United States v. American Home Assurance Co. |
| 10-002 | United States v. American Home Assurance Co. |
| 10-003 | United States v. American Home Assurance Co. |
| 10-125 | United States v. American Home Assurance Co. |
| 10-175 | United States v. American Home Assurance Co. |
| 10-179 | United States v. American Home Assurance Co. |
| 10-185 | United States v. American Home Assurance Co. |
| 10-311 | United States v. American Home Assurance Co. |
| 10-321 | United States v. Hartford Ins. Co. |
| 10-343 | United States v. American Home Assurance Co. |
| 11-052 | United States v. Hartford Ins. Co. |
| 11-087 | United States v. Y & L Enterprise |
| 11-206 | United States v. American Home Assurance Co. |
| 11-296 | United States v. Lincoln General Ins. Co. |
| 11-352 | United States v. Aftahour Inc. |
| 11-367 | United States v. Lincoln General Ins. Co. |
| 11-484 | United States v. Lincoln General Ins. Co. |
| 12-163 | United States v. Aegis Security Ins. Co. |

12-414     United States v. Hartford Ins. Co.
13-084     United States v. Lincoln General Ins. Co.
13-085     United States v. Lincoln General Ins. Co.
13-086     United States v. Lincoln General Ins. Co.
13-087     United States v. Lincoln General Ins. Co.
13-088     United States v. Lincoln General Ins. Co.
13-089     United States v. Lincoln General Ins. Co.
13-090     United States v. Lincoln General Ins. Co.
13-091     United States v. Lincoln General Ins. Co.
13-092     United States v. Lincoln General Ins. Co.
13-212     United States v. Great American Ins. Co. of NY
13-256     United States v. Int'l Fidelity Ins. Co.

2013-1203
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

UNITED STATES,
Plaintiff-Appellee,

v.

MILLENIUM DISTRIBUTION LUMBER CO. LTD.,
Defendant-Appellant,

and

XL SPECIALTY INSURANCE COMPANY,
Defendant-Appellant.
_____

Appeal from the United States Court of International Trade in
Case No. 06-00129,
Judge Delissa A. Ridgway
_____

**BRIEF FOR APPELLEE, THE UNITED STATES**

**<u>ISSUES PRESENTED</u>**

1.      In 2001, appellants misclassified entries of softwood lumber from Canada

as a type of lumber not subject to the United States-Canada Softwood Lumber

Agreement (SLA).  As a result, appellants did not present the necessary export

permits required by the SLA.  U.S. Customs and Border Protection (Customs)

assessed liquidated damages for the failure to provide the required permits.  Instead

of paying the liquidated damages or filing a mitigation petition, the importer,

Millenium Distribution Lumber Co. Ltd. (Millenium) filed protests challenging the

classification of its imported lumber.  Customs, at appellants' request, delayed

further action on the liquidated damages assessment pending resolution of the

classification issue.  This Court ultimately sustained Customs' classification.

Then, the Court of International Trade sustained the assessment of liquidated

damages and also awarded equitable prejudgment interest.  The first issue is

whether the trial court's award of prejudgment interest from the date of Customs'

first demand for payment on the surety, XL Specialty Insurance Co. (XL) was clear

error.

2.    The second issue is whether the trial court erred when it dismissed

appellant's Motion for Judgment on the Pleadings and held that the Government's

action was not premature because the mitigation proceedings authorized under 19

U.S.C. § 1623(c) and its implementing regulations are not a mandatory

administrative process that must be completed prior to the Government filing an

action to collect liquidated damages.

## STATEMENT OF THE CASE

### I.    Nature Of The Case

This is an action that was brought by the Government pursuant to 28 U.S.C.

§ 1582(2) to collect outstanding liquidated damages under three continuous bonds (the Bonds), issued by the surety, XL Specialty Insurance Co. (XL). The Bonds secured 168 entries of angle-cut lumber imported between April of 2000 and January of 2001 by Millenium Distribution Lumber Co. Ltd. (Millenium). On December 18, 2012, the Court of International Trade denied Millenium's motion for judgment on the pleadings, holding that exhaustion of administrative remedies was not a mandatory prerequisite to the Government's filing of this action. Following that decision, on January 2, 2013, the trial court granted summary judgment for the Government, finding that Millenium and XL were jointly and severally liable for breach of the Bonds. JA 1-30. The trial court held that liquidated damages were properly assessed for Millenium's failure to produce export permits in compliance with the requirements of the SLA. JA 22-23. The trial court further awarded the Government prejudgment interest calculated from the date of U.S. Customs and Border Protection's (Customs) first demand for payment as an element of complete compensation. JA 27, 29.

XL appeals the trial court's award of prejudgment interest, which Millenium joins. Millenium additionally challenges the trial court's finding that principles of administrative exhaustion did not apply to the Government's decision to file suit within the statute of limitations.

3

## II.     Relevant Facts And Procedural History

Between April 25, 2000 and January 3, 2001, Millenium made 168 entries of angle-cut lumber at the port of Blaine, Washington.  JA 42-44, 46, 49, 52-54, 56, 58-59, 61-62.  The 168 entries were secured by the Bonds.  JA 43, 52-53, 58-59, 190-192.  The Bonds were issued by XL's predecessor-in-interest, Intercargo Insurance Company.  Five (5) of the 168 entries were secured by a $50,000.00 continuous bond.  One hundred forty-nine (149) entries were secured a $3,000,000.00 continuous bond issued by XL.  The remaining fourteen (14) entries were secured by a $4,000,000.00 continuous bond.  JA 43-44, 46, 48, 53-54, 56, 59, 60, 62.  Under the terms of the Bonds, Millenium and XL jointly and severally promised to the Government that Millenium would comply with all Customs laws and regulations, including Customs' regulations relating to the SLA.  JA 44, 52-53, 58-59, 190-192.  Millenium and XL further agreed, under the terms of the Bonds, that each would be jointly and severally liable in the event of a default on the conditions of the Bonds and that each would pay, as demanded by Customs, all additional charges that resulted from a default of the conditions of the bond.  *Id.*

For all 168 of its entries, Millenium incorrectly classified its angle-cut lumber under heading 4418 of the Harmonized Tariff Schedule of the United States (HTSUS).  JA 45, 49, 52-53, 55-56, 58-59, 61-62.  Merchandise that is

properly classified under heading 4418 is not subject to the SLA. *Id.* Subsequent to entry, Customs determined that Millenium's lumber should have been classified under heading 4407 of the HTSUS. JA 45, 47, 49, 52-53, 55, 56. Merchandise that is classifiable under heading 4407 HTSUS is subject to the SLA. *Id.*

Given Millenium's misclassification of its angle-cut lumber, on or about December 28, 2000, and again between January 18, 2001 and March 21, 2001, Customs sent Millenium Notices of Action (CF 29), which informed Millenium that Customs had reclassified the merchandise under heading 4407. JA 45, 47, 49, 52, 54, 55, 56, 58, 60-62, 194, 212-214. The CF 29s further informed Millenium that because merchandise classified under heading 4407 was subject to the SLA, Millenium was required to secure and present export permits issued by the Government of Canada. *Id.* The CF 29s notified Millenium that it had twenty working days to submit the necessary permits and that a failure to do so would result in the assessment of liquidated damages. *Id.* Millenium's 168 entries were ultimately liquidated by Customs under the 4407 heading.

Millenium did not meet its obligations under the Bonds because it never acquired or presented the SLA permits. JA 46, 48, 50, 52, 54-56, 58, 60-63. Accordingly, Customs assessed liquidated damages. JA 195-197, 208-210, 215-217. On or about March 23, 2001, April 5, 2001, and September 21, 2001,

5

Customs issued to Millenium a "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment" (CF 5955A) for each of the subject entries.  JA 195-197, 208-210, 215-217.  Customs also sent copies of the Notice of Penalty or Liquidated Damages Incurred and Demand for Payment to XL.

Rather than pay the liquidated damages assessment or file an administrative petition for mitigation of liquidated damages, Millenium chose a different course. It filed protests that challenged Customs' classification of the imported merchandise under heading 4407.  JA 9.  Following the denial of those protests by Customs, Millenium filed an action contesting the denial in the Court of International Trade.  *Millenium Lumber Distribution Ltd. v. United States*, 31 CIT 575 (2007), *aff'd*, 558 F.3d 1326, 1331 (Fed. Cir. 2009) (*Millenium* classification case).  Between 2001 and 2005, at the request of Millenium, Customs withheld action on its liquidated damages claims.  JA 126-129, 198-203.  On or about August 24, 2001 and October 9, 2001, Customs sent Millenium correspondence indicating it would place the claims in a "holding status" until "the resolution of the filed protest."  JA 126, 128.

However, on or about May 23, 2005, while the *Millenium* classification case was still pending, and because the statute of limitations was drawing to a close, Customs sent separate letters to Millenium and XL, informing them both that,

absent a statute of limitations waiver and/or payment of the outstanding liquidated damages, Customs would file the instant action in order to preserve its rights.  JA 198-203.  Neither XL nor Millenium executed a statute of limitations waiver or tendered payment.  JA 31-33; *see also*, *United States v. Millenium Lumber Distribution Co. Ltd.*, 899 F. Supp. 2d 1340, 1344-45 (Ct. Int'l Trade 2012).  Accordingly, the Government filed this action on April 18, 2006.  JA 31-33.

In June 2006, this action was stayed pending the outcome of the *Millenium* classification case.  JA 33-34.  On April 16, 2007, the Court of International Trade decided the *Millenium* classification case in the Government's favor, holding that the classification of Millenium's angle-cut lumber under heading 4407 was correct. *Millenium*, 31 CIT at 584.  On March 5, 2009, this Court affirmed the Court of International Trade's determination.  *Millenium Lumber Distribution Ltd. v. United States*, 558 F.3d 1326, 1331 (Fed. Cir. 2009).

The court then lifted the stay in this case.  JA 35-36.  Millenium moved for judgment on the pleadings and all parties cross-moved for summary judgment.  JA 34, 36-39.  On December 18, 2012, the trial court denied Millenium's motion, holding that the Government was not required to wait for an importer to file a mitigation petition before filing a suit for liquidated damages.  *Millenium*, 899 F. Supp. 2d at 1352.  The court below found that the administrative proceedings

contemplated by a liquidated damages assessment were permissive, voluntary on the part of the importer, and not a mandatory prerequisite to instituting suit. *Id.* at 1348-50. Exhaustion, therefore, does not apply.

On January 1, 2012, the trial court issued its order and judgment on the cross-motions for summary judgment, finding in the Government's favor. JA 1-30. Noting that, absent an award of prejudgment interest, the Government "could not be made whole for the injury the liquidated damages were intended to redress," the trial court awarded the Government both the liquidated damages that were due and owing and prejudgment interest from the date of Customs' initial demand on both XL and Millenium. JA 1-2, 28. In awarding interest, the court noted that there is no requirement of undue delay or dilatory conduct on the part of the surety. JA 25. The court explained that the key consideration in awarding prejudgment interest was to ensure that the Government was compensated for its inability to access the money owed, recognizing that prejudgment interest is an element of complete compensation. JA 26-27. Thus, the court determined that interest accrued from the Government's first demands for payment. JA 29.

## SUMMARY OF ARGUMENT

The court below properly awarded the Government prejudgment interest. This Court has made clear that interest accrues from the date of the first demand on the surety. Because prejudgment interest is an element of complete compensation, interest properly runs from that date to ensure that the Government is fully compensated for the loss of use of money that is due and owing.

XL seeks to upend legal precedent and alter the date when interest begins to accrue. XL contends that no interest was due until this Court affirmed Customs' determination that the imported lumber was subject to the SLA in the *Millenium* classification case. The classification case, however, served no basis for the accrual of interest on liquidated damages. An action for liquidated damages resulting from a contractual breach of an entry bond is distinct from an action challenging classification and the liquidation of an entry. These actions are separate and independent from each other with distinct legal and jurisdictional bases. Moreover, if XL's theory of breach were accepted, it would lead to unworkable results. Customs would be unable to enforce laws governing entry requirements and an importer or surety would have unilateral control over the accrual of a liquidated damages action. XL's theory of breach also runs directly counter to precedent from this Court that the accrual of interest does not wait for

9

the completion of legal contests between a principal and creditor.

XL's argument that the trial court should have employed a dilatory conduct standard is also misplaced. The dilatory conduct standard has never been endorsed or employed by this Court. Further, the dilatory conduct undercuts the aim of complete compensation, which has consistently been the key animating principle in awarding prejudgment interest.

To the extent, as XL asserts, that any balancing of equities was required in this case, the trial court properly balanced the equities between the parties. The court below did not, as XL claims, fail to consider the many reasons XL put forth as to why it should not owe interest from the date of the Government's first demand. Rather, the court considered and then rejected XL's claims and, consistent with established precedent from this Court, chose to apply the principle of complete compensation.

As to Millenium's claim that the Government did not exhaust administrative remedies pursuant to 28 U.S.C. § 2637(d), the trial court correctly held that there was no such requirement. The administrative proceedings that are implicated in this case are mitigation proceedings for liquidated damages[1] under 19 U.S.C.

---

[1] Liquidated damages are assessed when there is a failure to meet the conditions of a bond posted with Customs. 19 C.F.R. § 172.1.

10

§ 1623(c).[2] *See also* 19 C.F.R. Part 172 (2001).  Notably, despite having six years to do so, Millenium never actually submitted a petition for mitigation.  Even if Millenium had submitted a petition, Customs would have had no affirmative obligation to resolve that petition prior to filing suit.  The mitigation procedures authorized under 19 U.S.C. § 1623(c) and its implementing regulations, 19 C.F.R. Part 172, are permissive rather than mandatory in nature and are not the type of mandatory administrative proceeding that is a prerequisite to judicial review under 28 U.S.C. § 2637(d).

## ARGUMENT

## I.    STATEMENT OF STANDARD OF REVIEW

The standard of review for a decision by a trial court to award prejudgment interest is an abuse of discretion which may be established by showing that the trial

---

[2] 19 U.S.C. § 1623(c) provides:

Cancellation of bond

The Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient. In order to assure uniform, reasonable, and equitable decisions, the Secretary of the Treasury shall publish guidelines establishing standards for setting the terms and conditions for cancellation of bonds or charges thereunder.

court either "made an error of law, or a clear error of judgment, or made findings which were clearly erroneous." *United States v. Reul*, 959 F.2d 1572, 1578 (Fed. Cir. 1992). Regarding Millenium's appeal of the exhaustion issue, the interpretation of the governing statutory provisions is reviewed *de novo*. *Lynteq, Inc. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992).

## II.    MILLENIUM'S FAILURE TO PRESENT EXPORT PERMITS BREACHED THE ENTRY BONDS

XL's only issue on appeal is the calculation of the prejudgment interest awarded from the date of the first demand on the surety. XL Br. at 2. In contesting the interest award, XL contends there was no breach of the Bonds and, therefore, no responsibility for prejudgment interest until the judicial determination of the *Millenium* classification case. XL Br. at 13-16. XL is incorrect, as breach of the entry bonds is not tied to the liquidation of entries or a judicial determination of classification.

### A. Entry Bonds Ensure Compliance With Laws Governing Imports

Customs has the authority to require a bond in order to ensure compliance with the laws and regulations associated with the entry of goods. 19 C.F.R. § 113.1; 19 C.F.R. § 113.4(a). This is an integral part of Customs' responsibility to protect the revenue and to administer and enforce the laws governing imports. Importers and sureties are bound by the bond conditions in 19 C.F.R. Part 113,

12

which are incorporated into a bond and include, among other things, the agreement to pay duties, taxes and charges, to make or complete entry, to produce documents, and to rectify any non-compliance with the provisions governing admission and entry.  19 C.F.R. § 113.62(a)-(l) (2013); 19 C.F.R. § 113.62 (a)-(k) (2001).  To that same end, the bond conditions impose an obligation, where applicable, to ensure and establish issuance of softwood lumber export permits and collection of export fees. 19 C.F.R. § 113.62 (l) (2013); 19 C.F.R. § 113.62(k) (2001).  If an importer does not comply with the bond conditions, the bond is breached.

Here, Millenium and its surety, XL, posted the Bonds to cover Millenium's entries of lumber.  JA 190-192.   Under the terms of the Bonds, Millenium and XL agreed "to assume the obligation to ensure within 20 working days of release of the merchandise, and establish to the satisfaction of Customs, that the applicable export permit has been issued by the Government of Canada."  19 C.F.R. § 113.62(k) (2001).  Although Millenium's imports of lumber were determined by Customs to fall within the purview of the SLA, implicating the bond conditions provided for in 19 C.F.R. § 113.62(k), Millenium failed to produce the necessary permits.  Consequently, the bonds covering Millenium's entries of lumber were breached, giving rise to a claim by the Government to recover liquidated damages. The applicable regulation provides "if the principal defaults on agreements in the

13

condition set forth in paragraph (k) … the obligors agree to pay liquidated damages equal to $100 per thousand board feet of the imported lumber." 19 C.F.R. § 113.62(l)(5) (2001); *see also United States v. Cocoa Berkau*, 990 F.2d 610, 613 (Fed. Cir. 1993) (it is "well settled that the date of accrual occurs at the time of the breach of the bond," citing *Reul*, 959 F.2d at 1576).

Contrary to XL's position, the breach of a bond covering compliance with entry conditions does not wait for the act of liquidation. Rather, the requirement to secure and present export permits is a condition of entry. As a condition of entry, it "vests contemporaneously" with entry. *See Reul*, 959 F.2d at 1577. This is supported by the language of the applicable regulation containing the SLA bond requirements, which specifically states that the permits must be provided within "20 working days of release of the merchandise" and not after liquidation is final or classification is confirmed. 19 C.F.R. § 113.62(k) (2001). At the expiration of twenty days, if permits are not presented, the entry requirements are not met, the bonds are breached, the importer is in default, and the Government may sue to collect on the bond for "liquidated damages equal to $100 per thousand board feet of the imported lumber." 19 C.F.R. § 113.62(l)(5) (2001).

XL, however, rejects this established construct, insisting that the entry bonds could only be breached after liquidation and a judicial decision on tariff

14

classification.  XL Br. at 14.  This theory fails for several reasons.

As an initial matter, XL's theory of breach ignores that an action to collect liquidated damages and a challenge to a protestable event like classification are distinct actions that have distinct legal and jurisdictional bases.   Each may proceed separately because each arises from a different underlying event (breach versus liquidation), has different jurisdictional bases (28 U.S.C. § 1582(2) versus 28 U.S.C. § 1581(a)), and each is an action that can only be brought by a particular party.[3]  In this instance, XL should not be allowed to rely on the separate, independent protest procedure to justify non-payment of liquidated damages and avoid interest.

Moreover, if XL's theory of accrual and breach were accepted, it would lead to unworkable results.  Liquidated damages serve an important function, as they enable Customs to enforce and uphold the laws governing the entry of merchandise into the United States.  If import requirements were dictated by liquidation and final adjudication of issues encompassed by liquidation, it would severely erode

---

[3] It is telling that the only case XL cites to support its theory of breach is *United States v. Utex International, Inc.*, 857 F.2d 1408 (Fed. Cir. 1988).  XL's reading of *Utex*, however, is incorrect.  *Utex* does not stand for the proposition that breach of an entry bond rests upon liquidation.  XL Br. at 14-15.  Utex involved a unique situation where a liquidated damages suit for the inadmissibility of imported shrimp was instituted after liquidation of the entry became final.  The court found that an action for breach of the bond was foreclosed as the liquidation was final as to all aspects of the entry.  *Utex*, 857 F.2d at 1412.  *Utex* has no applicability here as there was no final liquidation curtailing this action.

those regulatory and enforcement functions.  Put simply, Customs would be

powerless to enforce bond conditions that relate to such issues as admission, entry,

marking, redelivery, or conditional release.  *See* 19 C.F.R. § 113.62 (a)-(l) (2013);

19 C.F.R. § 113.62(a)-(k) (2001).

In fact, XL's theory of accrual would undercut the very bond conditions at

issue in this case.  If Customs could not enforce the SLA bond conditions at entry,

but rather could only demand export permits after liquidation (and in some cases

after protest and judicial review), the bond requirement to present export permits

within twenty days of entry would have no meaning.  That is, even if, as was the

case here, Customs was correct in its classification decision, it would have no

mechanism to demand export permits until well after – in some cases years after –

entry.[4]

Similarly, where, as was the case here, there is a protestable issue that could

delay Customs' assessment of liquidated damages, importers and sureties would

enjoy almost unilateral control over the accrual of a cause of action.  That is, even

if Customs had a valid basis to assess liquidated damages, an importer or surety

---

[4] It also must be noted that, as a practical matter, it would be nearly impossible for
the importer to obtain SLA permits for imports of softwood lumber made years
earlier since a finite number of permits are issued per year.  If a breach of a bond
condition waited until the final adjudication of an action arising from liquidation
and protest of an entry, by the time the requirement for a permit is settled, there
would likely be none available.

could indefinitely delay any such assessment by merely filing a protest and

pursuing additional review in the courts.  While those additional administrative and

judicial processes took their course, Customs would be powerless to assess or

collect liquidated damages, as it would be unable to establish the underlying breach

until after the completion of those reviews.

Finally, the notion that Customs is bound by the importer's classification of

the merchandise runs counter to the principle that the description of merchandise in

an entry summary or invoice is insufficient to overcome the presumption of

correctness Customs enjoys on matters of classification.  *See Universal Elec. v.*

*United States*, 112 F.3d 488, 492 (Fed. Cir. 1997) (the presumption of correctness

certainly carries force on any factual components of a classification decision, such

as whether the subject imports fall within the scope of the tariff provision).  Just as

the terms of the bond set out that when assessing liquidated damages Customs

determines all matters of quantity and value of the subject merchandise, so too

with respect to matters of classification.  *See* 19 C.F.R. § 113.62(m)(2) (2013); 19

C.F.R. § 113.62(l)(2) (2001).  Thus acceptance of XL's theory would undermine

long-standing principles governing the entry of goods.

**B. Legal Precedent Does Not Support XL's Position**

Not only is XL's theory of breach flawed, but XL's attempt to use it as a means to avoid the accrual of interest is unsupported by relevant case law. XL argues that no interest could have accrued while the *Millenium* classification case was pending because it purportedly established whether there was an actual breach of the Bonds. However, courts have consistently held that, even if there is a good faith dispute as to liability, interest continues to accrue. Moreover, XL's attempt to distinguish this case from any other case involving the breach of a bond, a dispute as to liability, and the accrual of interest is unavailing. XL Br. at 16-20.

This Court's decision in *Insurance Company of North America v. United States*, 951 F.2d 1244, 1247 (Fed. Cir. 1991) (*INA*) is illustrative. *INA* involved the breach of a timber removal contract that was issued by the United States Forest Service. *Id.* at 1246. Both here and in *INA* the principal and surety were jointly and severally liable under the bond. *Id.* at 1247. Both here and in *INA* the bond principal challenged the basis for the Government's claim: that it breached the underlying contract. *Id.* at 1245-46. Moreover, like XL, the surety in *INA* argued that interest could not have accrued on its obligation until after the conclusion of the litigation between the bond principal and the Government. *Id.* at 1246-47. In response, this Court stated very plainly that, "The surety's obligation to pay does

18

not wait for completion of legal contests between principal and creditor. If a surety's obligation to pay only arose upon conclusion of lawsuits, the creditor would lose a significant part of the protection it bargained to obtain." 951 F.2d at 1247. This Court explained:

> On October 19, 1984, the contracting officer issued a final determination that [the bond principal] was liable for breach of contract. The Government informed INA of this determination. On October 22, 1985, over a year later, the Forest Service sent INA a letter demanding payment of the bond by November 21, 1985. The letter stated that interest would accrue from that date. INA had ample time to assess its liabilities before November 21, 1985. With full notice, INA chose to withhold payment. At the latest, on November 21, 1985, interest began to accrue on INA's bond. From that time, INA, in effect, took for itself a loan on funds due the Government. INA cannot now claim that no interest is due.

*Id.* The same is true here. On May 23, 2005, Customs duly notified XL that, absent full payment, Customs would be taking action to protect its rights. With full notice of the underlying facts and ample time to assess its liabilities, XL chose to withhold payment, and, as such, cannot now claim that no interest is due. As noted by the court below, there may be a host of reasonable grounds for a surety's withholding of payment, including ongoing settlement discussions, serious liability or due process concerns, or disputes over the amount of money owed. JA-26. However, they cannot be the basis of a denial of prejudgment interest.

XL's reliance on *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515

19

U.S. 189 (1995), is equally unavailing. XL Br. at 17. In *City of Milwaukee*, the

City had denied that it had any fault relative to the sinking of the vessel at issue,

and thus the parties were not merely litigating the extent of their respective

liabilities. *Id.* at 191. Contrary to XL's assertion, there is no meaningful

difference between a case to establish fault versus one to establish whether the

"predicate event triggering liability occurred." XL Br. at 17. Both are disputes as

to whether there is any liability. Like this Court in *INA*, the Supreme Court in *City

of Milwaukee* rejected the argument that a "good faith-dispute" over liability is a

sufficient basis to depart from the "general rule that prejudgment interest should be

awarded to make the injured party whole." *Id.* at 196-97. The Court stated:

> In our view . . . [a good-faith dispute over liability] carries little
> weight. If interest were awarded as a penalty for bad-faith conduct of
> the litigation, the City's argument would be well taken. But
> prejudgment interest is not awarded as a penalty; it is merely an
> element of just compensation.

*Id.* Thus, a dispute over liability does not serve to avoid an award of prejudgment

interest.

Additionally, XL contends that the pendency of a legal challenge on the

issue of contractual liability justifies a delay by the surety in the payment of

liquidated damages. XL Br. at 20. As support, XL cites to this Court's decision in

*Utex* for the proposition that, "[I]t is not characteristic of either the law of surety or

the law of contracts that a defendant must routinely pay the amount demanded prior to judicial determination of contractual liability." XL Br. at 20 (citing *Utex*, 857 F.2d at 1414). The quoted language from *Utex* had nothing to do with the issue of prejudgment interest. At issue in *Utex* was whether the importer was required to file a protest and pay the full amount demanded in order to contest a government demand for liquidated damages. This Court held that the protest procedures set out in 19 U.S.C. § 1514 did not apply and an administrative protest and payment of damages assessed were not a prerequisite to defending against a claim for liquidated damages. 857 F.2d at 1414. Here, the Government's position is not that the surety must pay the disputed liquidated damages in order to defend the Government's collection action. In our view, the surety may of course withhold payment while it attempts to mount a defense. The consequence for this choice, however, must be the payment of interest to the Government to compensate for the use of funds owed from the date of demand.

Plainly, then, XL's theory of breach and attempt to use it as the basis for a delay in the accrual of interest cannot be accepted. As discussed above, the bond obligations at issue in this case were a condition of entry for merchandise that was subject to the SLA. 19 C.F.R. § 12.140(a) (2001); 19 C.F.R. § 113.62(k) (2001). Accordingly, the bond obligation vested at entry and prior to liquidation. Contrary

21

to XL's assertion, the *Millenium* classification case did not somehow change the date of the underlying breach. Rather, it merely affirmed Customs' determinations: (1) that the subject merchandise was in fact subject the SLA; (2) that Millenium breached the bonds when it failed to secure and present the necessary export permits at entry; and (3) that XL breached its own obligations under the bonds when it unjustly withheld payment after being notified of the default of its principal.

## III.   INTEREST WAS PROPERLY AWARDED IN THIS ACTION

Not only is XL's theory of breach untenable, it is immaterial to the accrual of prejudgment interest. Judicial precedent is clear that, with respect to a surety, interest accrues not from the date of the breach, but from the date of the first *demand* for payment.[5]  *Reul*, 959 F.2d at 1580. Moreover, interest may exceed the face amount of the bond when payment is unjustly withheld, as a part of the concept of complete compensation.

### A.      Prejudgment Interest Is An Element Of Complete Compensation Calculated From The Date Of First Demand

Even in the absence of a statutory authorization, a court may in its sound discretion award prejudgment interest. *Reul*, 959 F.2d at 1577. Prejudgment interest is compensatory in nature. Specifically, it is "compensation fixed by

---

[5] As to the bond principal, unlike a surety, it may be appropriate for prejudgment interest to accrue from the date of default or breach. *Reul*, 959 F.2d at 1579.

agreement or allowed by law for the use or detention of money, or for the loss of

money by one who is entitled to use it." *Black's Law Dictionary* 816 (7th ed.

1999); *see also* 4 William Blackstone, *Commentaries* * 434 (criticizing as an

"absurdity" the position, then held by a diminishing number of courts, that interest

may not accrue on a contractual obligation). Interest in this context is *not* punitive;

its purpose is to fairly compensate the party owed for the inability to use funds.

*Miller v. Robertson*, 266 U.S. 243, 257-58 (1924); *Billings v. United States*, 232

U.S. 261, 285 (1914).

For more than a century courts have awarded prejudgment interest upon the

legal determination of the onus of a debt to compensate the party owed for the

inability to use funds while the matter is being resolved. *Miller*, 266 U.S. at 257-

58; *Curtis v. Innerarity*, 47 U.S. 146, 154 (1848) ("Everyone who contracts to pay

money on a certain day knows, that, if he fails to fulfill his contract, he must pay

the established rate of interest as damages for his non-performance."). Moreover,

prejudgment interest as an element of complete compensation has long been

understood to apply to delayed payment of a contractual obligation to the United

States. *See, e.g., West Virginia v. United States*, 479 U.S. 305, 308-09 (1987) (in

the absence of an applicable federal statute, the federal courts should determine the

"appropriate measure of damages, expressed in terms of interest," for a delayed or

nonpayment of a contractual obligation to the United States." *quoting Royal Indemnity Co. v. United States*, 313 U.S. 289, 296 (1941); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943)).

Because prejudgment interest is designed to fully compensate the Government for the loss of the use of money due, interest accrues on the date of the first demand by the Government. *Reul*, 959 F.2d at 1580; *INA*, 951 F.2d at 1247. The underlying rationale is that prejudgment interest assessed against a surety bond ensures that the "creditor receives the value of the bond on its due date" by compensating the creditor for the loss of use of the money that was due. *Id.* (citing *West Virginia,* 479 U.S. at 310). As noted by this Court in *INA,* failure to pay upon proper demand is a breach of the surety's own obligation. 951 F.2d at 1246. Thus, a surety can be liable, up to and in excess of the face amount of the bond, for its "own default in unjustly withholding payment after being notified of the default of the principal." *Id.* (*quoting United States v. U.S. Fidelity & Guaranty Co.*, 236 U.S. 512, 530-31 (1915) (internal citation omitted)). Courts have stated that "it would be inequitable and unfair for the government to make an interest-free loan of . . . [the money owing] from the date of final demand to the date of judgment." *United States v. Imperial Food Imports*, 834 F.2d 1013, 1016 (Fed. Cir. 1987).

In this case, the Government sought and the trial court awarded "nothing more than the value of the bond on its due date," which was May 23, 2005, the date of the first demand for payment on XL by Customs. JA 198-203.[6] According to established legal precedent, interest is properly calculated from this date. Following the law, the trial court correctly held that interest should be awarded from the date of the demand and there is no reason to alter this determination.

**B.      XL Unjustly Withheld Payment After Proper Notification Of Liability**

XL does not take issue with the notion that a surety may be liable for prejudgment interest and does not appear to dispute the notion that a surety may even be liable for prejudgment interest in excess of the face amount of the bond. XL Br. at 21. XL, however, contends that the trial court abused its discretion in awarding prejudgment interest under the circumstances of this case. XL Br. at 20. Specifically, XL argues that in evaluating what constitutes an "unjust" withholding of payment, the court below should have used a so-called "dilatory conduct" standard rather than the widely-accepted principle of "complete compensation."

---

[6] There is no reason, as set forth by the trial court, that all the same principles discussed herein would not apply to Millenium, as they are jointly and severally liable under the Bonds. The only material difference is that the Government's demands on Millenium came before its demands on XL. Customs made demands on Millenium on or about March 23, April 5, 2001, and September 21, 2001 by issuance of CF 5955As. JA 195-197, 208-210, 215-217.

XL points to *United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001) (*N&B Jewelry*)) to support its dilatory conduct theory. XL. Br. at 25.  At best, *N&B Jewelry* stands for the narrow proposition that a surety may not be liable for interest in excess of a bond that accrues during the pendency of a protest over increased duties, and is therefore not controlling here. 177 F. Supp. at 1320-22.  This case concerns liquidated damages where the surety never filed a protest.  Moreover, even if *N&B Jewelry* were applicable here, it appears to be the only instance where a court has used to so-called dilatory conduct standard regarding an award of prejudgment interest.

At the Court of International Trade, *N&B Jewelry* is an outlier.[7]  Both in this case and in *Canex*, a case with facts that are virtually identical to this one, XL argued that it could not be liable for interest in excess of the bond, citing *N&B Jewelry*.  The *Canex* court rejected XL's reliance on *N&B Jewelry* and concluded that, "contrary to XL's assertions, '[dilatory conduct] . . . is not required for a surety to be liable for prejudgment interest exceeding the amount of the bond." *Canex*, 2011 WL 3438870 at *4.  The *Canex* court further explained that the "key factor was that prejudgment interest would compensate the Government for its

---

[7] XL's citation to *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) for the proposition that any categorical rule is inconsistent with the principles of equity is unavailing. XL Br. at 27.  At issue in *eBay* were the conditions under which a court should grant or deny permanent injunctive relief.  The case did not touch upon the conditions or standard for an award of prejudgment interest.

inability to access money it was owed prior to the entry of judgment." *Canex*, 2011 WL 3438870 at * 3.  In the instant case, after examining the *Canex* decision, the Court of International Trade also rejected XL's argument that dilatory conduct is a prerequisite to an award of prejudgment interest.  JA 27; *see also* Millenium, 887 F. Supp. 2d at 1383.  The trial court further noted that the *Canex* decision is in full accord with this Court's endorsement of the principle of complete compensation.  *Id.*

Just as importantly, this Court has never employed or endorsed the dilatory conduct standard.  Rather, both this Court and the Supreme Court have endorsed the assessment of not just prejudgment interest, but also interest in excess of the face amount of a bond, where a surety unjustly withholds payment after being notified of the default of the principal.  *INA*, 951 F.2d at 1246 (citing *U.S. Fid. & Guar. Co.*, 236 U.S. at 530-31).  This standard treats both the Government and sureties fairly under an objective rule that is in accord with the terms of the bond contract.  The contract itself *does not* say "pay, as demanded by Customs, after a timely protest and judicial review," or "pay, as demanded by Customs only if the surety exhibits bad faith or dilatory conduct."  The only contractual precondition to payment is a demand by Customs.  19 C.F.R. § 113.62(a)(ii) (2013); 19 C.F.R. § 113.62(a)(ii).

If this Court were to adopt the dilatory conduct standard, complete

compensation would become the exception rather than the rule.  That is, in those

instances where the Government is owed any interest in excess of the bond, it

could only receive full compensation for its loss upon a showing that the surety

was somehow dilatory or acted in bad faith.  This runs directly counter to well-

established precedents on prejudgment interest.  *See, e.g., City of Milwaukee*, 515

U.S. at 195-96 (the essential rationale for awarding prejudgment interest is to

ensure full compensation for loss; it "should be awarded in maritime collision

cases, subject to a limited exception for "peculiar" or "exceptional"

circumstances); *Royal Indemnity*, 313 U.S. at 296-97 ("[with full knowledge of the

breach] the debtor has had the use of the money, of which its default has deprived

the creditor.  Interest upon the principal sum from the date of default, at a fair rate,

is therefore an appropriate measure of damage for the delay in payment.");

*Imperial Food*, 834 F.2d at 1016 (despite defendants' argument that the

government did not file suit until a year after its final demand, "it would be

inequitable and unfair for the government to make an interest-free loan . . . from

the date of the final demand to the date of judgment"); *INA*, 951 F.2d at 1246

("[T]he Government seeks no more than the value of its bond on the due date.");

*Canex*, 2011 WL 3438870 *3 (the relevant fact is that the defendants had use of

28

the funds, not the Government).  *See also Premium Plus Partners, L.P. v. Goldman, Sachs & Co*., 648 F.3d 533, 538-39 (7th Cir. 2011) (award of interest returns both the money and the time value for its use to the plaintiff; the full time value of money is no windfall).

The principle of complete compensation prevails even where the facts appear to be unfavorable to such an award.  In *Princess Cruises Inc. v. United States*, 397 F.3d 1358, 1368 (Fed. Cir. 2005), Princess challenged the Court of International Trade's award of prejudgment interest on the government's claims for outstanding Arriving Passenger Fees (APFs).  Princess argued that, "anyone familiar with the long and tortured history of this case cannot possibly conclude that the equities lie with the Government here."  397 F.3d at 1368.  In fact, the trial court had even agreed with Princess that, "Customs inability to provide Princess with an explanation for the actual basis for some of its bills until late in [the] litigation [was] 'appalling.'" *Id.* at 1367.  Nevertheless, both the trial court and this Court held that the government was entitled to prejudgment interest.  This Court took note of Supreme Court precedent indicating that:

> [A] persuasive consideration in determining whether such obligations bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed.  *And this Court has generally weighed these relative equities in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obligation, should be*

> *fairly compensated for the loss thereby sustained.*

*Id*. at 1368 (emphasis in original) *quoting Rodgers v. United States,* 332 U.S. 371,

373-74 (1947).  Accordingly, this Court agreed with the trial court's determination

that, "the government's acts, though appalling, did not outweigh its right to the

interest it could have earned had it received the APF payments in the ordinary

course of business."  *Id.* (internal citations omitted).  Thus, in upholding the Court

of International Trade's award of prejudgment interest, this Court stated that the

Court of International Trade had "appropriately focused on the principle of full

compensation."  *Id.*

XL, however, takes issue with the idea that complete compensation is

necessary here, because liquidated damages, in its view, are a deterrence penalty

rather than compensation for an actual loss to the Government.  XL Br. at 29-30.

That is not a meaningful distinction.  Once a bond is breached and an obligation

becomes due it accrues interest.  *Curtis*, 47 U.S. at 154 ("Everyone who contracts

to pay money on a certain day knows, that, if he fails to fulfill his contract, he must

pay the established rate of interest as damages for his non-performance.")

Liquidated damages play an important part of Customs' ability to administer and

ensure compliance with the laws governing imports to protect the revenue and the

public.  To that end, in cases where this Court has upheld an award of prejudgment

interest based on the non-payment of liquidated damages, this Court has consistently emphasized the principle of complete compensation. *See, e.g., Reul*, 959 F.2d at 1577-80; *Imperial Food Imports*, 834 F.2d at 1016 (prejudgment interest on an award of liquidated damages should be awarded as a matter of equity and fairness).

In the instant case, the trial court did nothing more than follow precedent in "hewing to the principle of complete compensation" and awarding the Government interest from the date of its initial demand. JA 28; *see also, Millenium*, 887 F. Supp. 2d at 1384. XL and Millenium owed liquidated damages resulting from failure to present export permits and breaching the Bonds. XL and Millenium did not pay the money due. There is no doubt that the liquidated damages along with any interest is due and owing. The trial court in this instance, fairly awarded such interest to compensate the Government for the inability of the use the funds. There was clearly no abuse of discretion.

### C.    In Any Event, The Trial Court Properly Balanced The Equities

Even assuming that any balancing of equities was required here, the Court of International Trade properly balanced the relative equities and properly awarded prejudgment interest.[8]

---

[8] We note that there is some tension in the case law as whether any balancing of equities is required in awarding prejudgment interest to the Government. *Princess*

As discussed above, consistent with precedent from this Court, the court below hewed to the principle of complete compensation. "[E]quity compel[ed] an award of prejudgment interest" because without it, "Millenium and XL will have enjoyed (in effect) a long-term 'interest-free loan of money' that has been due and owing to the Government." 887 F. Supp. 2d at 1384 (*quoting Imperial Food*, 834 F. 2d at 1016). The award of interest is not punitive, but to fairly compensate the one owed for the inability to use the funds. *Miller*, 266 U.S. at 257-58; *Billings*, 232 U.S. at 285.

XL, however, urges this Court to re-balance the equities, citing a laundry list of reasons as to why it should not be compelled to make the Government whole. XL Br. at 32-40. XL raised many of these same issues below. The trial court did not, as XL suggests, fail to consider these issues, but rather it made quick work of them. As noted above, after considering the many reasons put forth by XL as to

---

*Cruise Lines*, 397 F.3d at 1368 (*comparing Rodgers,* 332 U.S. at 373-74 (where the Supreme Court noted that in weighing the relative equities the Court had generally favored full compensation) *with West Virginia*, 479 U.S. at 311 n.3 (where the Supreme Court rejected the notion that there should be any balancing of equities when awarding prejudgment interest)). To the extent the Court undertakes to resolve this tension in deciding this case, we urge the Court to follow the most recent Supreme Court decision in *West Virginia* and make prejudgment compensatory interest automatic as a matter of federal common law when a party fails to pay the Government following a proper demand for payment. Such a rule constitutes good public policy, as the people's money is at stake, and the absence of such interest would afford delinquent parties interest-free loans – *i.e.,* an appropriation – without express congressional approval.

why it should not be compelled to pay prejudgment interest, the trial court stated:

> [XL has made no] effort to place within its proposed construct the growing number of cases in which prejudgment interest has been awarded against sureties. Surely XL does not contend that, in each such case, the surety's delay in payment was attributable to bad faith and not to legitimate 'disputes over the amount of money owed . . ., serious liability and due process concerns, ongoing settlement discussions conducted in good faith, or other reasonable grounds for postponement of payment.'  Under XL's theory, an award of prejudgment interest against a surety would be rare indeed.

JA 26; *see also, Millenium*, 887 F. Supp. 2d at 1382-83 (internal citation omitted).

Indeed, XL may well have had a difficult risk assessment as to how to manage its liability for liquidated damages.  However, as noted by the court below, that should not exempt XL from paying the interest that is owed and it does not outweigh the Government's right to be made whole.  XL received the Government's initial demand in May of 2005, and from that point forward, with full notice of the underlying facts and ample time to assess its liabilities, XL chose to withhold payment.  XL was free to make that choice.  However, it cannot now claim that no interest is due.  What the Government seeks, and what the trial court awarded, is nothing more than the value of the Government's bonds on their due date.

## IV.    EXHAUSTION IS NOT APPLICABLE IN THIS CASE

In addition to joining XL on the interest issue, Millenium appeals on separate grounds that, pursuant to 28 U.S.C. § 2637(d), the Government should

have been required to exhaust administrative remedies before filing the instant action. Millenium argues that the exhaustion doctrine is a statutory requirement that must be followed. Millenium Br. at 14. However, by the terms of 28 U.S.C. § 2637(d), it is clear that exhaustion is only required "where appropriate." Because the mitigation proceedings that are permitted under the authority of 19 U.S.C. § 1623(c) are not mandatory, do not toll the statute of limitations, and are not a prerequisite to the Government filing a collection action for liquidated damages, and were not even instituted by Millenium, the exhaustion doctrine is inapplicable here. In sum, as noted by the trial court, Millenium's exhaustion argument "has no sound basis in law," is "weak on the facts," and advocates for an administrative scheme that is "entirely unworkable." *Millenium*, 899 F. Supp. 2d at 1345.

## A.    Millenium Never Initiated Any Administrative Proceedings

The administrative proceedings contemplated, but never realized, in this case are mitigation proceedings for liquidated damages under 19 U.S.C. § 1623(c). *See also* 19 C.F.R. Part 172 (2001). After liquidated damages are assessed following a breach of the bond conditions, a principal or its surety has the option to submit to Customs an application, known also as a petition, for relief from payment of liquidated damages. 19 C.F.R. § 172.1(b) (2001). The petition need not be in any particular form, but must set out the facts relied upon to justify cancellation of the

bond.  19 C.F.R. § 172.2(c) (2001).  A petition must be filed within sixty days

from the date of mailing of the notice of liability of liquidated damages.[9]  *Id.* at

172.3(b) (2001).  Customs then considers the petition without a hearing and

mitigates as appropriate given the circumstances.  19 C.F.R. § 172.11 (2001).

Pursuant to section 1623(c), Customs has the discretion to cancel the bond and

accept a lesser amount in satisfaction of the liquidated damages assessed.

Instituting this type of administrative mitigation proceeding is entirely voluntary

on the part of a principal or a surety.

Millenium complains that the Government should have delayed the filing of

its collection action until after the completion of mitigation proceedings at the

administrative level.  Millenium Br. at 18.  Setting aside for a moment the fact that

Millenium's exhaustion argument lacks any legal merit, the fact is that in the six

years between Customs' assessment of liquidated damages and its filing of the

instant action Millenium (nor XL) never even attempted to submit a petition for

mitigation and pursue an administrative remedy.  In other words, Millenium never

bothered to initiate or engage in the administrative processes that it claims it should

have been afforded as a matter of right before the Government filed its collection

action.

---

[9] A surety has 60 days from the date of its notice to pay liquidated damages to file its own petition for relief. 19 C.F.R. § 172.4 (2001).

As noted above, between March and September of 2001, Customs notified Millenium that it had assessed liquidated damages under the Bonds due to Millenium's failure to secure and present the necessary export permits, as required under the SLA. JA 195-197, 208-210, 215-217. As Millenium admits, the notices advised Millenium of the right to petition for mitigation of the liquidated damages. Millenium Br. at 19. Millenium did not file any petition.

Because Millenium cannot dispute that it never actually filed a petition, Millenium attempts to construe its communications with Customs regarding its repeated requests to keep the liquidated damages action in a "holding status" as the equivalent of actually submitting a petition for mitigation and the process of administrative review that is contemplated under 19 U.S.C. § 1623(c). JA 126-129. While Customs did agree to refrain from taking further action on the liquidated damages cases while Millenium pursued its classification challenge, that refrain does not amount to consideration of an administrative petition. Moreover, even with Customs' agreement not to move the liquidated damages case forward, there was nothing to prevent Millenium from filing a petition.

Millenium attempts to bolster its claim that the petition process had been initiated by citing to 19 C.F.R. § 172.21 and noting that the regulations "expressly contemplate an administrative decision before the commencement of a collection

36

action…" Millenium Br. at 18. However, because Millenium never actually submitted a petition in this case, 19 C.F.R. § 172.21 has no applicability. 19 C.F.R. § 172.21 makes clear that if, based on the petition, Customs decides to cancel or mitigate a claim, Customs' decision will only be effective for 60 days, and if no action is taken by the importer or surety Customs will pursue an action for the full amount of the claim.[10] In short, 19 C.F.R. § 172.21 governs those situations *where a petition is actually filed* and a decision is issued by Customs. It in no way supports Millenium's more general assertion that Customs is always required to issue some sort of administrative decision before filing a collection action.

Moreover, any misunderstanding of a possible pending petition was dispelled with Customs' May 2005 correspondence, which made clear that any prior understanding to withhold action was no longer effective. JA 198-203. The May 2005 correspondence plainly stated that absent a statute of limitations waiver or payment of the liquidated damages, Customs would be taking action to protect its rights. *Id*. During the time between Customs' May 2005 correspondence and the filing of the instant action in April of 2006, however, Millenium (or XL) never bothered to submit a petition.

---

[10] The referenced language is drawn from the 2001 version of 19 C.F.R. § 172.21, which was applicable at the time Customs assessed liquidated damages.

Given Millenium's inaction, it is difficult to understand how it can make the lack of a completed mitigation proceeding the basis for its appeal.  Moreover, any suggestion that Millenium was somehow powerless to move the administrative process forward should be rejected.  Millenium Br. at 20.  As stated by the court below:

> [I]t is clear beyond cavil that administrative mitigation proceedings could have been initiated only by Millenium or its surety (*not* by Customs), and that mitigation proceedings could have been instituted only by filing of an appropriate application or petition . . . And it is undisputed that neither Millenium nor its surety ever filed any such request for relief, even though such an application/petition for mitigation could have been submitted at any time after Millenium's receipt of the Liquidated Damages Notices in 2001.

*Millenium*, 899 F. Supp. 2d at 1350 n.12 (emphasis added) (internal citations omitted).

In addition to its weakness on the facts and applicable regulations, Millenium's exhaustion argument advocates for an administrative scheme that "entirely unworkable."  *Millenium*, 899 F. Supp. at 1345.  Although Millenium suggests that it was somehow Customs' obligation to move the administrative process forward, it cannot seriously be disputed that under 19 C.F.R. Part 172, absent an actual petition for mitigation, which was never submitted in this case, there is no administrative process.  That is, after Customs assesses liquidated damages, there can be no further administrative

action taken by Customs if an importer or surety never submits a petition.

Nevertheless, Millenium argues that the Government was precluded from

filing suit until after the conclusion of mitigation proceedings under Part

172.  In other words, Millenium envisions an administrative scheme where

importers and sureties enjoy unilateral control over when the Government

may commence an action to collect liquidated damages, *i.e.*, an

administrative scheme where all an importer or surety would need to do to

avoid liability is simply refuse to file a petition, knowing that the

Government would be powerless to prevent the expiration of the statute of

limitations.  One can understand, then, why the court below characterized

the administrative scheme that Millenium advocates as "patently

unworkable."  *Millenium*, 899 F. Supp. 2d at 1340.

### B.    Even If A Petition Were Filed, Mitigation Proceedings Are Not Mandatory Administrative Proceedings

Even if Millenium had submitted a petition, administrative petition and

mitigation proceedings under 19 U.S.C. § 1623(c) are not a mandatory

administrative process that trigger the exhaustion requirement under 28 U.S.C.

§ 2637(d).  Millenium takes issue with the trial court's approach of examining the

kind of administrative proceeding covered by section 1623(c), which does not toll

the statute of limitations provided for in 28 U.S.C. § 2415 as it is not an

administrative proceeding "required by law," in determining whether there is a

requirement for exhaustion of administrative remedies.  Millenium Br. at 20-22,

24.  However, Millenium fails to appreciate that all laws must be read in concert

with one another and that 19 U.S.C. § 1623(c), 28 U.S.C. § 2415 and 28 U.S.C.

§ 2637 must be read so as not be in conflict.

In assessing the administrative proceedings intended under 19 U.S.C.

§ 1623(c) and its implementing regulations, 19 C.F.R. Part 172, both this Court

and the court below have held on numerous occasions and in various contexts that

the mitigation procedures are permissive rather than mandatory in nature.  *See,*

*e.g., Cocoa Berkau*, 990 F.2d at 615-16 (holding that the Government is not

required to resolve a pending petition before seeking to recover liquidated damages

through a court action); *see also United States v. Ataka America, Inc.*, 826 F. Supp.

495, 501-02 (1993) (noting that petition and mitigation proceedings are not the

type of mandatory administrative proceeding that must be completed in order for

the right to file a court action to accrue).

This Court's decision in *Cocoa Berkau* is particularly relevant.  In *Cocoa*

*Berkau*, the Government brought suit to recover liquidated damages and interest

from an importer and surety under a bond.  *Id.*  The issue in *Cocoa Berkau* was

whether the Government's action to collect unpaid liquidated damages against a

40

defendant surety was barred by the six-year statute of limitations set forth in 28

U.S.C. § 2415(a).   990 F.2d at 611.   Under Section 2415(a), the Government was

obligated to bring its action "within six years after the right of action accrues or

within one year after final decisions have been rendered in the applicable

*administrative proceedings required by contract or by law, whichever is later*."   *Id.*

at 613 (emphasis added).   In making its argument, the Government asserted that its

suit was timely because it was filed within one year of Customs' denial of the

surety's request for administrative relief under 19 U.S.C. § 1623(c).   *Id.* at 615.

The Government maintained that although the suit was not brought within six

years of the accrual of the right of action, the administrative mitigation proceedings

tolled the statute of limitations.   This Court disagreed.   Noting the "discretionary

and summary" nature of mitigation proceedings under 19 U.S.C. § 1623(c), this

Court held that they were not "administrative proceedings required by contract or

law" under Section 2415(a) and, thus, did not toll the statute of limitations.   *Id.* at

616.   In this regard, this Court stated "nothing in the express language or

legislative history of section 1623(c) indicates that Congress intended a bond

surety to be required to file a petition for mitigation or that such petition must be

filed before the government can bring suit to recover liquidated damages."   *Id.* at

615.   The Court observed that, "[f]rom its permissive terms it is clear that the

determination whether to authorize cancellation of a bond under section 1623(c)
falls within the discretion of the Secretary of Treasury." *Id*.  The Court continued
"[t]hat the Secretary was somehow "required" to consider whether to exercise his
discretionary authority once the surety petitioned for mitigation relief does not
establish that the section 1623(c) proceeding was one 'required by law' within the
meaning of 28 U.S.C. § 2415." *Id.*  Accordingly, this Court held that a petition for
mitigation is not a condition precedent to suit by the Government to recover
liquidated damages.

The Court of International Trade's decision in *Ataka*, a case involving the
attempted recovery of Customs duties from an importer's successor and surety,
further reinforces the judicially acknowledged permissive character of mitigation
proceedings in a liquidated damages case.  In *Ataka* the court recognized that,
"[g]enerally mandatory proceedings are those which must be completed before
rights to file court action accrue."  826 F. Supp. at 501.  The trial court went on to
explain that a mitigation proceeding for liquidated damages under 19 U.S.C.
§ 1623(c) is voluntary and "based entirely upon written submissions with no
provisions for a hearing."  *Id.*  Thus, Court of International Trade concluded that,
"[t]hese discretionary and informal proceedings need not be resolved in order for

42

the government to recover liquidated damages under a bond through court action."
*Id.* (citations omitted).

In short, both *Cocoa Berkau* and *Ataka* concluded that section 1623 administrative proceedings are not mandatory. The non–mandatory nature of section 1623 proceedings signifies that the statute of limitations is not tolled, irrespective of whether or not such a petition is filed. Likewise, Customs is not obligated to resolve or engage in section 1623 administrative proceedings prior to filing suit, and, therefore, there is no applicable exhaustion requirement. As noted by the trial court:

> [T]he holding in *Cocoa Berkau* was premised broadly on the Court of Appeals' determination that mitigation proceedings are so voluntary and so discretionary that they play no role in determining *when* the Government may sue for liquidated damages. * * * As *Canex* recognized, the linchpin in *Cocoa Berkau* (and *Ataka*) was the permissive, voluntary, and discretionary nature of the administrative mitigation proceedings at issue in those cases—the same administrative proceedings at issue in *Canex* and here.

899 F. Supp. 2d at 1347 (emphasis in original).

In the instant case, the Government's liquidated damages claims were subject to the same six-year statute of limitations, set out in 28 U.S.C. § 2415(a), that was at issue in *Cocoa Berkau*. Accordingly, had the Government waited to file suit—as Millenium argues it was purportedly required to do—it faced the very real possibility that, like *Cocoa Berkau*, the statute of limitations would have

43

barred its claims.  This, of course, would have been an untenable result for the

Government.  Moreover, as noted above, in its May 23, 2005 correspondence,

Customs made clear to Millenium that the statute of limitations was approaching

and, therefore, in order to avoid further action on the liquidated damages claims the

Government would need a statute of limitations waiver.  Both Millenium and XL

refused to sign such a waiver, highlighting once again that it was Millenium's own

actions, not Customs, that caused any lack of opportunity to seek relief at the

administrative level prior to the Government filing suit.[11]  Consequently, contrary

to Millenium's assertions, petitions for mitigation are not the type of mandatory

administrative proceeding that is a prerequisite to judicial review under 28 U.S.C.

§ 2637(d).

Indeed, it is telling that the only case Millenium cites to support its claim

that the Government was required to exhaust administrative remedies is *United*

*States v. Bavarian Motors*, 4 CIT 83 (1982).  Millenium Br. 16 n.11.  As pointed

out by the court below, however, Millenium's reliance on *Bavarian Motors* is

---

[11] Indeed, it is equally well-established that the assessment of liquidated damages is not a protestable event, and, thus, a surety or importer is not required to exhaust its administrative remedies in order to preserve its right to defend on the issue of liability in a subsequent collection action brought by the Government.  *Utex*, 857 F.2d at 1413-14; *United States v. Toshuku America, Inc.*, 879 F.2d 815, 818 (Fed. Cir. 1989); *Pope Products v. United States*, 15 CIT 279, 282-285 (1991); *Halperin Shipping Co., Inc. v. United States*, 742 F. Supp. 1163, 1166-67 (1990).

misplaced. *Bavarian Motors* offers no real support for Millenium's exhaustion argument because it was decided "prior to the 1984 effective date of 19 U.S.C. § 1505(c), which gave the Government an immediate right to sue for liquidated damages, notwithstanding the pendency of protest proceedings." *Millenium*, 899 F. Supp. 2d at 1349 (internal citation omitted); *see also Canex*, 32 CIT at 409 (citing *Ataka*, 826 F. Supp. at 503).   Later decisions from both this Court and the Court of International Trade have since established that the assessment of liquidated damages is not a "charge or exaction" that is protestable under 1514(a)(3).  *See Utex*, 857 F.2d at 1413-14; *Toshuku*, 879 F.2d at 818; *Pope Products*, 15 CIT at 282-285.  Accordingly, post-*Utex* and *Toshuku*, the *Bavarian Motors* court could not have reached the same result.  Further, in *Bavarian Motors* the reason the Government filed suit despite the fact that the surety had a pending protest was to avoid potential statute of limitations problems.  *Id.* at 86 fn.6.  Thus, to the extent that *Bavarian Motors* stands for the proposition that the Government must refrain from filing suit while the administrative proceedings related to a claim for liquidated damages are still pending or that those administrative proceedings would somehow toll the statute of limitations, it is in direct contravention to both *Cocoa Berkau* and *Ataka*.  *Cocoa Berkau*, 990 F.2d at 615; *Ataka*, 826 F. Supp. at 607-08.

In addition to having no support in the case law, Millenium's exhaustion argument also finds no support in the Customs regulations that implement 19 U.S.C. § 1623, 19 C.F.R. Part 172.[12]  Millenium takes issue with the trial court's assertion that the Government effectively had no option but to file this action because both Millenium and XL refused to execute statute of limitations waivers. Millenium Br. at 31-32.  Citing to 19 C.F.R. § 172.3(e) and 19 C.F.R. § 172.21, Millenium claims that Customs has a regulatory mechanism to deal with instances where the statute of limitations may foreclose Customs' ability to pursue a liquidated damages claims.  Indeed, Millenium goes so far as to allege that Customs violated its own regulations when it failed to utilize the procedures set forth in 19 C.F.R § 172.3.  Millenium Br. at 31-32.  As was the case with Millenium's assertion that there were in fact administrative proceedings that had been commenced at the time Customs filed suit, however, it is clear from the language of both 19 C.F.R. § 172.3(e) and § 172.21 that Millenium's argument is specious.

19 C.F.R. § 172.3(e) states in relevant part:

*If a penalty or claim for liquidated damages is assessed and fewer than 180 days remain from the date of penalty or liquidated damages notice before the statute of limitations may be asserted as a defense*, the Fines, Penalties, and Forfeitures Officer may specify in the notice

---

[12] All references in this section to Part 172 are to the 2001 version of the regulations.

> a reasonable period of time, but not less than 7 working days, for the
> filing of a petition for relief. If a petition is not filed within the time
> specified, the matter will be transmitted promptly to the appropriate
> Office of the Chief Counsel for referral to the Department of Justice.

(emphasis added).  Here, 19 C.F.R. § 172.3(e) was inapplicable because Customs

assessed liquidated damages *six years* before the applicable statute of limitations.

To this same end, assuming, *arguendo*, that Millenium would have been precluded

from filing a petition during the period in which Customs had agreed to withhold

action on its liquidated damages claims, Customs' May 2005 correspondence—

made clear that it would no longer be holding the liquidated damages in abeyance

in light of the looming statute of limitations—sent to Millenium approximately a

year before the statute of limitations would have expired on Customs' liquidated

damages claims.  This notice gave Millenium ample time to file a mitigation

petition with Customs prior to the Government filing suit for liquidated damages.

In addition, far from supporting Millenium's assertion that the

administrative process set forth in 19 C.F.R. Part 172 is mandatory and must be

exhausted prior to a Government collection action, the plain language of 19 C.F.R.

§ 172.3 supports precisely the opposite conclusion.  The language of this

regulation clearly reflects an understanding that a pending petition will not toll the

statute of limitations.  Accordingly, it establishes a mechanism for a compressed

47

administrative process for those instances where Customs must file an action in order to preserve its rights.

Similarly, as discussed above, 19 C.F.R. § 172.21 governs those instances where a surety or importer *actually submits a petition* that is acted on by Customs. This is clear from the plain language of the regulation, which states in relevant part: " [a] decision to mitigate a penalty or to cancel a claim for liquidated damages upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision."  Because Millenium never actually submitted a petition in this case, 19 C.F.R. § 172.21 has no applicability.  Moreover, while 19 C.F.R. § 172.21 certainly contemplates a 60 day period for an importer or surety to act on a Customs' decision before Customs files suit, it in no way supports Millenium's more general assertion that Customs is always required to issue some sort of administrative decision prior to filing suit.[13]

---

[13] Millenium also argues that it should not have been forced waive the protections it enjoyed under the applicable statute of limitations in return for consideration of its claims at the administrative level.  Millenium Br. at 36.  To this end, Millenium cites *United States v. Jean Roberts of Cal, Inc.*, 30 CIT 2027, 2034 (2006), for the proposition that Customs may not condition consideration of issues raised at the administrative level upon an agreement to execute a statute of limitations waiver. *Id.*  Of course, in this case, Customs never conditioned further administrative proceedings on a statute of limitations waiver.  Moreover, as explained above, Millenium never even attempted to initiate mitigation proceedings at the administrative level.  Thus, its citation to *Jean Roberts* is inapt.

In sum, the trial court correctly held that administrative proceedings under section 1623(c) are not a mandatory administrative process that must be completed prior to the Government filing suit to collect liquidated damages.  Millenium's argument to the contrary is unsupported.

## **CONCLUSION**

For these reasons, we respectfully request that the court affirm the judgment below.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Amy M. Rubin
AMY M. RUBIN
By:    Acting Assistant Director
International Field Office

/s/Aimee Lee
AIMEE LEE
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, NY 10278
Tel. No. 212-264-9230 or 9253
Attorneys for Plaintiff-Appellee

Of Counsel:
CHRISTOPHER SHAW
Office of Assistant Chief Counsel
U.S. Customs and Border Protection

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 27th day of November 2013, a copy of the foregoing Brief for Defendant-Appellee, United States in Appeal No. 2013-1203, was filed electronically.  The filing was served electronically to all parties by operation of the Court's electronic filing system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Aimee Lee</u>
Aimee Lee

CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(C)

_____
                                        :
UNITED STATES,                          :
                Plaintiff-Appellee,     :
                                        :
        v.                              :
                                        :
MILLENIUM DISTRIBUTION                  :        Appeal No. 2013-1203
LUMBER CO. LTD.,                        :
                Defendant-Appellant,    :
                                        :
        and,                            :
                                        :
XL SPECIALTY INSURANCE                  :
COMPANY,                                :
                Defendant-Appellant.    :
_____ :

I, Aimee Lee, a senior trial counsel in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch,

International Trade Field Office, who is responsible for the foregoing brief,

relying upon the Microsoft Word word count feature of the word processing

program used to prepare the brief, certify that this brief complies with the

type-volume limitation under Rule 32(a)(7)(B), and contains 10,603 words.


                                        /s/ Aimee Lee