In The

# United States Court of Appeals

### For The Federal Circuit

## UNITED STATES,

*Plaintiff – Appellee*,

## v.

## MILLENIUM DISTRIBUTION LUMBER CO. LTD,

*Defendant – Appellant,*

### and

## XL SPECIALTY INSURANCE COMPANY,

*Defendant – Appellant.*

**APPEAL FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE IN NO. 06-CV-0129, JUDGE DELISSA A. RIDGWAY.**

_____

### BRIEF OF APPELLANT
## MILLENIUM DISTRIBUTION LUMBER CO. LTD

_____

Joel R. Junker
JOEL R. JUNKER & ASSOCIATES
1191 Second Avenue, Suite 1800
Seattle, Washington  98101
(206) 621-7878

*Counsel for Appellant*
  *Millenium Distribution Lumber Co. LTD*

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

US _____ v. Millenium Distribution Lumber Co., Ltd.

No. 13-1203

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Millenium Lumber Distribution Co., Ltd. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Millenium Lumber Distribution Co., Ltd.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Millenium Lumber Distribution Co., Ltd.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Joel R. Junker, Joel R. Junker & Associates

May 3, 2013
_____
(Date)

_____
Signature of counsel

JOEL R. JUNKER
_____
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

## CERTIFICATE OF SERVICE

Joel R. Junker certifies that I am an attorney with the law firm of Joel R. Junker & Associates, with offices at 1191 Second Ave., Ste. 1800, Seattle, WA 98101, and that on May 8, 2013 on behalf of Millenium Lumber Distribution Co., Ltd., the appellant herein, I caused the within Certificate of Interest to be served electronically by operation of the Court's electronic filing system upon:

Department of Justice at aimee.lee@usdoj.gov and barbara.williams@usdoj.gov;
US CBP at Christopher.d.shaw@cbp.dhs.gov; and
XL Insurance Co. at apurcell@strtrade.com and rferguson@strtrade.com

Joel R. Junker

Dated: May 8, 2013
　　　Seattle, WA

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I. Statement of Related Cases ............................................1

II. Statement of Jurisdiction ..............................................1

III. Statement of Issue........................................................1

IV. Statement of the Case ..................................................2

V. Statement of the Facts..................................................3

VI. Summary of Argument .................................................6

VII. Standard of Review......................................................14

VIII. Argument ....................................................................14

    A. The Statutory requirements for the Doctrine of Exhaustion of Administrative Remedies are applicable to this case.........................14

    B. The Court of International Trade erred in finding that there was no administrative remedy or proceeding commenced by the Government for collection of the liquidated damages that are the subject of the instant action ..........................................................16

    C. The Court of International Trade erred in finding that the doctrine of exhaustion of administrative remedies did not bar the judicial action because the administrative remedies in this case were not remedies "required by law" as required for extending the statute of limitations in 28 U.S.C. § 2415(a)................20

D.    CBP violated its own liquidated damages claim regulations that require, in accord with § 2637(d), the exhaustion of administrative remedies in an administrative liquidated damages collection proceeding before commencing a judicial collections action ............................................................................... 29

1.    CBP was required under its regulations to provide the opportunity for administrative remedies before proceeding to a judicial collection action ................................. 29

2.    CBP violated its own regulations by referring the matter to the Department of Justice to commence a judicial action before exhaustion of administrative remedies ............... 30

E.    The fact that a right to recover liquidated damages may accrue before exhaustion of administrative remedies does not allow the government to commence an action to recover liquidated damages before the exhaustion of administrative remedies as required by § 2637(d) ......................................................................... 37

IX.    CONCLUSION ............................................................................... 39

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Laboratories v. Gardner*,
   387 U.S. 136, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967) ................................15

*Bright v. United States*,
   603 F.3d 1273 (Fed. Cir. 2010) ....................................................................25

*Chase Sec. Corp. v. Donaldson*,
   325 U.S. 304 (1945)................................................................................10, 25

*Cloer v. Sec'y of HHS*,
   603 F.3d 1341 (Fed. Cir. 2010) ....................................................................25

*Guess? Inc. v. United States*,
   944 F.2d 855 (Fed. Cir. 1991) ......................................................................14

*Intercargo Ins. Co. v. United States*,
   19 C.I.T. 1435, 912 F. Supp. 544 (1995), *aff'd*,
   129 F.3d 135 (Fed. Cir. 1997) ......................................................................15

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994)................................................................................34, 35

*McKart v. United States*,
   395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969) .........................11, 15

*Order of Railroad Telegraphers v. Railway Express Agency*,
   321 U.S. 342 (1944)......................................................................................25

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
   842 F.2d 47 (3d Cir. 1988) ...........................................................................35

*Rocovich v. United States*,
   933 F.2d 991 (Fed. Cir. 1991) ......................................................................14

*Sperling v. Hoffmann-La Roche, Inc.*,
　　24 F.3d 463 (3d Cir. 1994) .............................................................25

*Thomson Consumer Elecs., Inc. v. United States*,
　　247 F.3d 1210 (Fed. Cir. 2001) ...............................................11, 15

*United States v. Ataka America, Inc.*,
　　17 CIT 598, 826 F. Supp 495 (1993)........................20, 28, 37, 38

*United States v. Bavarian Motors*,
　　4 CIT 83 (1982) ...............................................................16, 24

*United States v. Canex Int'l Lumber Sales Ltd.*,
　　32 CIT 407 (2008). ...............................................................21, 28

*United States v. Cocoa Berkau*,
　　990 F.2d 610 (Fed. Cir. 1993) ...........................11, 20, 26, 28

*United States v. Commodities Export Corp.*,
　　972 F.2d 1266 (Fed. Cir.1992) ...................................................27

*United States v. Heraues-Amersil, Inc.*,
　　671 F.2d 1356 (C.C.P.A. 1982) ...................................................38

*United States v. Jean Roberts of Cal., Inc.*,
　　30 CIT 2027 (CIT 2006)...............................................35, 36, 37

*United States v. Millenium Lumber Distrib. Co.*,
　　899 F. Supp. 2d 1340 (2013) ...........................................*passim*

*Warner-Lambert Co. v. United States*,
　　24 CIT 205 (2000) .......................................................................24

## STATUTES

19 U.S.C. § 1505...............................................................................38

19 U.S.C. § 1505(c) ..........................................................................38

19 U.S.C. § 1592...............................................................................35

19 U.S.C. § 1623 .................................................................................11, 26, 27

19 U.S.C. § 1623(c) ...............................................................................6, 17

28 U.S.C. § 1295(a)(5) ...............................................................................1

28 U.S.C. § 1582 ...............................................................................18, 38

28 U.S.C. § 2415 .......................................................................................16

28 U.S.C. § 2415(a) ............................................................................*passim*

28 U.S.C. § 2637(d) ...........................................................................*passim*

**RULE**

Fed. R. Cir. 28(i) .......................................................................................2

**REGULATIONS**

19 C.F.R. § 172 ...................................................................................7, 17

19 C.F.R. § 172(d) ...................................................................................18

19 C.F.R. § 172(e)......................................................................................18

19 C.F.R. § 172.1 ...............................................................................17, 20

19 C.F.R. § 172.1(a)...................................................................................17

19 C.F.R. § 172.1(b) ..................................................................................17

19 C.F.R. §§ 172.1-172.2(a) ......................................................................29

19 C.F.R. § 172.3(b) ..................................................................................17

19 C.F.R. § 172.3(c)...................................................................................17

19 C.F.R. §§ 172.3(b)-(c)...........................................................................29

19 C.F.R. § 172.3(e)..........................................................................................20, 31

19 C.F.R. § 172.4 ............................................................................................17, 29

19 C.F.R. § 172.21 ...........................................................................................*passim*

# I.    Statement of Related Cases

Millenium states that there are no other appeals from a lower court decision on the subject of this action pending before this or any other court of appeals.

# II.    Statement of Jurisdiction

The U.S. Court of International Trade on December 18, 2012 denied the Motion for Judgment on the Pleadings filed by defendant Millenium Lumber Distribution Co. Ltd. ("Millenium") and entered its original final judgment in the action below in favor of plaintiff the United States of America ("plaintiff" or "the government") on January 2, 2013.  Joint Appendix ("JA") 1-2.  An appeal was taken to this Court with a Notice of Appeal filed February 11, 2013.  Jurisdiction over this appeal lies under 28 U.S.C. § 1295(a)(5).

# III.    Statement of Issue

1.  Whether the Court of International Trade erred in denying Millenium's Motion for Judgment on the Pleadings on the grounds that the Government did not fail to exhaust administrative proceedings by filing the action in the court below for collection of liquidated damages prior to the conclusion of related administrative proceeding for collection of liquidated damages.

2.    Whether the Court of International Trade abused its discretion in imposing equitable prejudgment interest based solely upon finding that the

Government was ultimately entitled to the liquidated damages, without balancing the relative equities in the case.[1]

## IV.    Statement of the Case

The United States filed suit in the Court of International Trade on April 18, 2006, seeking to recover from the surety, XL Specialty Insurance Co. ("XL") and Millenium, the importer, payment of liquidated damages for the alleged breach of its bonds covering certain softwood lumber products imported from Canada by Millenium.  (JA-44).

On July 23, 2007, Millenium filed a Motion for Judgment on the Pleadings which requested dismissal of the action for failure to exhaust administrative remedies as required by 28 U.S.C. § 2637(d).

By Orders dated June 19, 2006, June 11, 2008, and April 7, 2009, the Court stayed all proceedings pending the issuance of a decision by this Court on the merits of Millenium's challenge to CBP's tariff classification of the subject merchandise, initiated in a separate action, CIT Case No. 02-00595 (CAFC Appeal No. 07-1401); (CIT Docket Nos. 13, 29-30, 32), (JA-69, 70 & 73).  On March 5, 2009, this Court issued its determination in Court No. 02-00595, upholding CBP's tariff classification.  (JA-90-100).

---

[1] Pursuant to Federal Circuit Rule 28(i), Millenium joins in and incorporates by reference the brief and argument of appellant XL Specialty on the issue of prejudgment interest.  Accordingly, this issue and related relief will not be addressed further in Millenium's brief.

Upon lifting of the court's stay, Millenium and XL moved for summary judgment on January 10, 2010 and March 12, 2010, respectively, and the Government cross-moved for summary judgment on June 16, 2010.

On December 18, 2012, the court denied Millenium's Motion for Judgment on the Pleadings.  (JA-1-2).

On January 2, 2013, the CIT granted the Government's cross-motion for summary judgment and denied Millenium and XL's respective motions for summary judgment. CIT Slip Op. 13-1.  The CIT also awarded the Government prejudgment interest against XL and Millenium.  (JA-3-30).

XL and Millenium each filed notices of appeal from the CIT's order, and those appeals were combined in this action. Millenium has appealed both the denial of the Motion for Judgment on the Pleadings and the Court's award of prejudgment interest.  XL's appeal is concerned only with the Court's award of prejudgment interest against the surety, XL.

## V.    Statement of the Facts

Millenium entered the merchandise relevant to this action between April 25, 2000 and January 3, 2001.  (JA-43).  Millenium classified the entered merchandise under Heading 4418 Harmonized Tariff Schedule of the United States ("HTSUS") which was outside the scope of the U.S.-Canada Softwood Lumber Agreement of 1996 (hereafter "SLA").  (JA-45, 47 & 48).  On December 28, 2000, January 18

3

and 22, 2001 and March 21, 2001, CBP issued to Millenium Notices of Action (CF 29) informing Millenium of CBP's position that the merchandise was classified in a HTSUS subheading that was within the scope of the SLA and required the issuance of an export permit by the Government of Canada (hereafter "export permit") (JA-45, 47 & 49). Millenium could not provide CBP with export permits, but challenged CBP's classification of the imported merchandise by filing timely protests on July 18, 2001 and on August 29, 2001 after the subject entries liquidated. (JA-116)

CBP issued a Notice of Penalty and Liquidated Damages (CF 5955A) (hereafter "Liquidated Damages Notices") against Millenium in March, April and September, 2001 for each entry. (JA-46, 48 & 50).

Each Liquidated Damages Notice informed Millenium of its right to petition CBP for relief from the liquidated damages. The notices provided in part as follows:

> If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation. Write the petition as a letter or in legal form; submit in (duplicate) (triplicate), addressed to the Commissioner of Customs, and forward to the FP&F Officer at
>
> U.S. CUSTOMS SERVICE/FP&F, 9901 PACIFIC HIGHWAY, BLAINE, WA 98230.

(JA-8 & 116).

By letter dated August 24, 2001(JA-126), the CBP Fines, Penalties and Forfeitures Officer at the port of Blaine advised counsel for Millenium that CBP would "continue to update (the liquidated damages) cases with a holding status until resolution of the filed protest(s)."  By letter to Millenium dated October 9, 2001 (JA-128), CBP stated:

> As for your request concerning the status of this liquidated damages case, we have placed this case in a holding status, like the other cases associated with this principal, until resolution of the filed protest involving truss components.

On April 8, 2002, CBP denied Millenium's protests on the classification issue.  (JA-117).  Millenium commenced an action in the Court of International Trade[2] on September 12, 2002 challenging CBP's denial of the protests.  (JA-117).

By letter to the CBP Fines, Penalties and Forfeiture Officer dated January 28, 2003, counsel for Millenium confirmed with CBP that it was continuing to hold the administrative liquidated damages cases in abeyance pending the outcome of the litigation involving the denied protests.  (JA-129)

CBP took no action on the administrative liquidated damages cases until May 23, 2005 when CBP notified Millenium and the surety XL Specialty Insurance Co. that although the agency would be willing to allow the classification litigation to run its course, Customs would need to take appropriate action to preserve the agency's liquidated damages claims, unless Millenium and the surety

---

[2] Court No. 02-00595, filed September 12, 2002.

made full payment or the two executed waivers of the statute of limitations within 30 days.  (JA-46, 48, 50 & 117).

Millenium and the surety declined to execute waivers of the statue of limitations and did not make payment of the liquidated damages while the underlying classification litigation continued.  (JA-46, 48, 50 & 168).

CBP took no further action and issued no further notices in the administrative liquidated damages cases.  Approximately eleven months after CBP requested the waivers of the statute of limitations, the Government on April 18 2006 commenced a judicial collection action against Millenium and XL Specialty for the liquidated damages.  (JA-42-51).

VI.    **Summary of Argument**

The court below erred in not dismissing the Government's judicial action to collect liquidated damages commenced before the exhaustion of administrative remedies.  The doctrine of exhaustion of administrative remedies is found in 28 U.S.C. § 2637(d) ("§ 2637(d)"), which provides that the U.S. Court of International Trade "shall, where appropriate, require the exhaustion of administrative remedies."

The court erred first in finding that there was no administrative remedy or proceeding commenced by the Government in connection with the liquidated damages that are the subject of the instant action.  Title 19 U.S.C. § 1623(c)

provides in connection with import bonds that "the Secretary of the Treasury shall publish guidelines establishing standards for setting the terms and conditions for cancellation of bonds or charges thereunder;" pursuant to this authority, U.S. Customs and Border Protection ("CBP" or "Customs") promulgated regulations under 19 C.F.R. Part 172.

Under these regulations, CBP issued to Millenium Notices of Penalty and Liquidated Damages (CF 5955A) ("Liquidated Damages Notices") against Millenium for each entry which in accordance with the regulations informed Millenium of its right to object and petition CBP for relief from the liquidated damages. The regulations also provide that a decision to mitigate a penalty or to cancel a claim for liquidated damages upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision (unless the decision itself prescribes a different effective period) before any collection action or referral to the Department of Justice to commence a judicial collection action.

CBP by letter dated October 9, 2001 indicated that "we have placed this case in a holding status, like the other cases associated with this principal, until resolution of the filed protest involving truss components," and on January 28, 2003, counsel for Millenium confirmed in a letter to CBP the agency's indication

that it was continuing to hold the administrative liquidated damages cases in abeyance pending the outcome of the litigation involving the denied protests.

In light of the statutory and regulatory provisions for administrative procedures and remedies for claims for liquidated damages, and CBP's notices, communications and actions in the "liquidated Damages case(s)" involving Milleinium, there is no basis in the record for the court's conclusion that there "never were" administrative remedy proceedings for collection of liquidated damages for purposes of the requirement of the doctrine exhaustion of administrative remedies. The liquidated damages cases in which Millenium received notices and had express rights were for claims and collection of the same liquidated damages sought by the government in its judicial collection action.

Second, the court erred in finding that the doctrine of exhaustion of administrative remedies did not bar the Government's judicial action for collection of liquidated damages because the administrative remedies in this case were not remedies "required by law" as required under 28 U.S.C. § 2415(a) for extending the time bar of the statute of limitations. The statute of limitations on government claims based on contract found in § 2415(a) requires that a complaint must be filed "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." The court found that the doctrine of

exhaustion of administrative remedies did not bar the government's action because the administrative remedy in liquidated damages cases is not a proceeding "required by law" as provided under 28 U.S.C. § 2415(a). In short, the court applied a statutory requirement from the statute of limitations in § 2415(a), for determining whether a late filed action was statutorily barred, to the doctrine of exhaustion of administrative remedies, for purposes of determining whether a premature action should be barred under § 2637(d).

However, the "not required by law" statutory requirement for calculating the statute of limitations bar to late filed actions does not apply as a matter of law to the doctrine of exhaustion of administrative remedies given their different underlying statutory authority, and should not apply through judicial extension because the purposes of the statute of limitations and the doctrine of exhaustion of administrative remedies are entirely different.

The statute of limitations in § 2415(a) and its express requirements are specifically applicable to the time bar for late filed actions brought by the United States. The "required by law" requirement has specific and limited applicability to the calculation of the one year addition to the six year limitation period for commencing an action following a "final decision in applicable administrative proceedings required by contract or by law."

9

In contrast, the statute in § 2637(d) which provides a bar under the doctrine of exhaustion of administrative remedies contains no reference to or limitation on specific types or characterizations of administrative remedies or proceedings (e.g. voluntary or mandatory) or parties to which it applies.

The purposes and nature of the Statute of Limitations and the Doctrine of Exhaustion of Administrative Remedies are significantly different such that judicial extension of the "required by law" requirement by the court below to the doctrine of exhaustion of administrative remedies is an inappropriate and unsupported restriction on the doctrine inconsistent with 28 U.S.C. § 2637(d).

The Supreme Court has explained that the purpose and justification of statutes of limitation "is found in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."[3]

The doctrine of exhaustion of administrative remedies, in contrast to the statute of limitations, does find its justification in "logic" rather than just "necessity and convenience."  The logic of the litigation bar under the doctrine is to protect courts from premature involvement in administrative proceedings, and to protect

---

[3] *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945).

agencies from judicial interference, as well as to make a factual record, or to exercise the agency's discretion or apply its expertise.[4]

With respect to the purposes of the requirement in § 2415(a) of a administrative proceeding "required by law", the court's explanation of its particular purpose establishes that it has no relevance to a bar under the doctrine to a premature action. The Federal Circuit in *United States v. Cocoa Berkau*[5] found that for purposes of extending the six year statute of limitations, the permissive nature of an administrative proceeding, in which the agency was not required to exercise its discretionary authority to grant the petitioned relief, would not extend the statute of limitations because such a result would thwart the purpose of the statute's preventing stale claims by "permit[ting] a single party to postpone unilaterally and indefinitely the running of the statue of limitations."[6] This concern, for a party's unilateral ability to subvert the purpose of the statutory time bar against judicial actions, is not a concern for application of the doctrine of exhaustion of administrative remedies. An importer cannot stop the government from proceeding with the administrative remedies under 19 U.S.C. § 1623, and if the government wishes to avoid the time bar for a judicial action under the doctrine

---

[4] *See Thomson Consumer Elecs.*, *Inc. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001) (*citing McKart v. United States*, 395 U.S. 185, 194-195, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969)).
[5] 990 F.2d 610 (Fed. Cir. 1993).
[6] *Id.* at 614.

of exhaustion of administrative remedies present in this case, it can and must conclude the administrative remedy, pursuant to and required by its regulations, and then proceed to a judicial collections action.

Unlike for the statute of limitations in § 2415(a), there is no purpose served by circumscribing the intended benefits of the doctrine of administrative exhaustion by limiting them only to administrative remedies and proceedings that are "required by law."  Indeed, to the extent the administrative remedy in the instant case involved the unrealized "right" of the principal and the surety to file a petition in the administrative proceeding, it is highly preferably and entirely consistent with the "logic" and purposes of the doctrine of exhaustion of administrative remedies to require the agency to exercise its discretion in the administrative proceeding for collection of liquidated damages before commencing a judicial action for the same remedy.

Third, CBP violated its own liquidated damages claim regulations that require in accord with § 2637(d) the exhaustion of administrative remedies before commencing a judicial collections action.

CBP in the first instance was required under its regulations to provide the opportunity for administrative remedies before proceeding to a judicial collection action.

The regulations further provide specific procedures to follow in the event that the statute of limitations becomes an issue for enforcement. These regulatory requirements are consistent with the exhaustion of administrative remedies, and could have been followed in this case. Thus, the court was in error when it found that the doctrine of exhaustion of administrative remedies does not apply because the "Practical Implication" of Millenium's argument is that the "Government effectively had no option but to file this action" because of the earlier decision by Millenium and the surety not to waive the statute of limitations.[7]

Moreover, the court erred by conditioning defendants' rights and the exhaustion of administrative remedies required under § 2637(d) on the waiver of their rights under the statute of limitations, contrary to other precedent of the Court of International Trade.

Fourth, the fact that a right to recover liquidated damages may accrue before exhaustion of administrative remedies does not allow the government to commence an action to recover liquidated damages before the exhaustion of administrative remedies as required by § 2637(d). The accrual of a right on which an action is based per se does not give rise to a party's ability to commence an action at any time it wishes. Different laws often place conditions on when an

---

[7] *United States v. Millenium Lumber Distrib. Co.*, 899 F. Supp. 2d 1340, 1352 (2013).

accrued right may be pursued, as CBP regulations and § 2637(d) do in the case of claims for liquidated damages.

For the foregoing reasons, as detailed further *infra*, the court erred in failing to dismiss the government's collection brought before the required exhaustion of administrative remedies under § 2637(d).

## VII. Standard of Review

The issues of whether a trial court properly ruled on a motion to dismiss and the proper interpretation of a statute are questions of law that are reviewed *de novo*. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991).

## VIII. Argument

### A. The Statutory requirements for the Doctrine of Exhaustion of Administrative Remedies are applicable to this case.

The doctrine of exhaustion of administrative remedies ("the doctrine") applicable to this case is found in 28 U.S.C. § 2637(d) ("§ 2637(d)"), which provides that the U.S. Court of International Trade "shall, where appropriate, require the exhaustion of administrative remedies."[8]

The general purpose of this statutory requirement "is to protect courts from premature involvement in administrative proceedings, and to protect agencies

---

[8] 28 U.S.C. § 2637(d) (2013).

'from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"[9]

In addition, the Federal Circuit in *Thomson Consumer Elecs., Inc. v. United States*[10] noted the more pragmatic considerations outlined by the Supreme Court behind requiring the exhaustion of administrative remedies:

> Exhaustion requirements ensure that an agency and the interested parties fully develop the facts to aid judicial review. *McKart v. United States*, 395 U.S. 185, 194, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969). "Judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise." *Id.*
>
> Other justifications for requiring exhaustion have to do with practical notions of judicial efficiency and notions of administrative autonomy. *Id.* at 194-95. The courts may never have to intervene if the complaining party is successful in vindicating his rights in the pursuit of his administrative remedies. *Id.* In addition, the agency must be given a chance to discover and correct its own errors. *Id.* Finally, it is possible that by allowing frequent and deliberate evasion of administrative processes the effectiveness of an agency could be weakened by encouraging people to ignore its procedures. *Id.* at 195.

In effect, the doctrine of exhaustion of administrative remedies functions as a bar to premature litigation. The doctrine makes, where appropriate, the resolution of administrative remedies a prerequisite to a party's commencement of litigation of the same remedies that are the subject of the administrative

---

[9] *Intercargo Ins. Co. v. United States*, 19 C.I.T. 1435, 1437, 912 F. Supp. 544, 546 (1995), *aff'd*, 129 F.3d 135 (Fed. Cir. 1997), *quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967).
[10] 247 F.3d 1210, 1214 (Fed. Cir. 2001).

proceeding. There is nothing in the language of 28 U.S.C. § 2637(d) or in the

stated rationale and purposes of the doctrine that suggests its bar against premature

litigation commenced before the exhaustion of administrative remedies does not

apply equally to the government as well as private party litigants.[11]

> **B.    The Court of International Trade erred in finding that there was no administrative remedy or proceeding commenced by the Government for collection of the liquidated damages that are the subject of the instant action.**

The court below held in part that the exhaustion of administrative remedies

was not required because "contrary to Millenium's assertions at various points in

its briefs, there are no relevant administrative mitigation proceedings pending at

Customs — and there never were."[12] This surprising conclusion is not supported

by the record before the court.

---

[11] *See generally*, *U.S. v. Bavarian Motors*, 4 C.I.T. 83 (1982), in which the Court of International Trade dismissed an action by the United States against a surety as premature where the United States filed suit to collect liquidated damages before the statutorily-mandated time frame for the surety to protest the government's demand for liquidated damages had elapsed. *Compare*, the legislative history on the statute of limitations for government actions in 28 U.S.C. § 2415: "[I]t is only right that the law should provide a period of time within which the Government must bring suit on claims just as it now does as to claims of private individuals. The committee agrees that the equality of treatment in this regard provided by this bill is required by modern standards of fairness and equity." (JA 178).

[12] 899 F. Supp. 2d at 1351. The Court's opinion refers to the administrative liquidated damages proceedings somewhat incorrectly as the "mitigation proceedings." Millenium's Motion to Dismiss does not refer to "mitigation proceedings" at the agency level, but rather "administrative proceedings" which can include administrative remedies and remedies beyond mitigation petitions. *See* discussion Section D.1 *infra*.

Title 19 U.S.C. § 1623(c) provides in connection with import bonds that:

> The Secretary of the Treasury may authorize the cancellation…of any charge that may be made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.  In order to assure uniform, reasonable, and equitable decisions, the Secretary of the Treasury shall publish guidelines establishing standards for setting the terms and conditions for cancellation of bonds or charges thereunder.

Pursuant to this statute, CBP promulgated regulations found at 19 C.F.R. Part 172.  Section 172.1 provides that the principal on a bond and the surety "will be notified in writing of any liability for liquidated damages or penalty incurred and a demand will be made for payment."[13]  This notification also must give further "Notice of right to petition for relief."[14]  A petition for relief is to be filed within 60 days of the notice[15] unless an extension is granted by a Fines, Penalties, and Forfeitures Officer who under the regulation "is empowered to grant extensions of time to file petitions when the circumstances so warrant."[16]  If the principal fails to file a petition for relief, Customs must make a demand for payment on the surety who then has a further 60 days to file a petition for relief.[17]

---

[13] 19 C.F.R. § 172.1(a).

[14] 19 C.F.R. § 172.1(b):  "(b) Notice of right to petition for relief.  The notice will inform the principal that application may be made for relief from payment of liquidated damages or penalty."

[15] 19 C.F.R. § 172.3(b).

[16] 19 C.F.R. § 172.3(c).

[17] 19 C.F.R. § 172.4.

Consistent with the requirements of § 2637(d), these regulations covering administrative proceedings concerning liquidated damages expressly contemplate an administrative decision before the commencement of a collection action under 28 U.S.C. § 1582 by the Department of Justice.  Section 172.21 provides:

> <u>Decisions effective for limited time</u>.  A decision to mitigate a penalty or to cancel a claim for liquidated damages upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision unless the decision itself prescribes a different effective period.  If payment of the stated amount is not made or a petition or a supplemental petition is not filed in accordance with regulation, *the full penalty or claim for liquidated damages will be deemed applicable and will be enforced by promptly transmitting the matter*, *after required collection action*, *if appropriate*, *to the appropriate office of the Chief Counsel for preparation for referral to the Department of Justice* unless other action has been directed by the Commissioner of Customs.  Any such case may also be the basis for a sanction action commenced in accordance with regulations in this chapter.[18]

In March, April and September, 2001, CBP issued a Notice of Penalty and Liquidated Damages (CF 5955A) ("Liquidated Damages Notices") against Millenium for each entry.  (JA-46, 48 & 50).  Each Liquidated Damages Notice informed Millenium of its right to petition CBP for relief from the liquidated damages.  These notices provided in part as follows:

---

[18] 19 C.F.R. § 172.21 (emphasis added).  The agency regulations for claims for liquidated damages also provide for offers in compromise (19 C.F.R. Part 172 Subpart D) and supplemental petitions (19 C.F.R. Part 172 Subpart E).

If you feel there are extenuating circumstances, you have the right to object to the above action.  Your petition should explain why you should not be penalized for the cited violation.  Write the petition as a letter or in legal form; submit in (duplicate) (triplicate), addressed to the Commissioner of Customs, and forward to the FP&F Officer at

U.S. CUSTOMS SERVICE/FP&F, 9901 PACIFIC HIGHWAY, BLAINE, WA 98230.

(JA-8 & 116).

By letter dated August 24, 2001 (JA-126), the CBP Fines, Penalties and Forfeitures Officer at the port of Blaine advised counsel for Millenium that CBP would "continue to update (the liquidated damages) cases with a holding status until resolution of the filed protest(s)."  CBP by letter dated October 9, 2001 indicated that "we have placed this case in a holding status, like the other cases associated with this principal, until resolution of the filed protest involving truss components," (JA-128) and on January 28, 2003, (JA-129) counsel for Millenium confirmed in a letter to CBP the agency's indication that it was continuing to hold the administrative liquidated damages cases in abeyance pending the outcome of the litigation involving the denied protests.

Despite the statutory and regulatory provisions for administrative remedies and procedures for claims for liquidated damages, and despite CBP's notices, communications and actions in these "liquidated damages case(s)," the court below concluded that there "never were" administrative remedy proceedings for purposes of the requirement of the doctrine exhaustion of administrative remedies.

Millenium respectfully submits there is no basis in the record for such a conclusion.[19]  The liquidated damages cases in which Millenium received notices and had express rights were for claims and collection of the same liquidated damages sought by the government in its judicial collection action.

**C.     The Court of International Trade erred in finding that the doctrine of exhaustion of administrative remedies did not bar the judicial action because the administrative remedies in this case were not remedies "required by law" as required for extending the statute of limitations in 28 U.S.C. § 2415(a).**

The denial of the motion to dismiss by the court below was based on the principle that this action brought by the government is not barred under the doctrine by the existence of a pending administrative proceeding unless that proceeding is "required by law" as provided under 28 U.S.C. § 2415(a).[20]  This principle, according to the Court's decision, is applicable by way of judicial extension in three cases.

The first two cases are *U.S. v. Cocoa Berkau*, 990 F.2d 610 (Fed. Cir. 1993) ("*Cocoa Berkau*") and *U.S. v. Ataka America, Inc.*, 17 CIT 598, 826 F. Supp 495 (1993) ("*Ataka America*"), in which the government sought to prevent dismissal of

---

[19] The court's confusion about the existence of an administrative action to collect liquidated damages is reflected in the statement, "Nor does Millenium seriously dispute that Millenium was in control of whether — and, if so, when — to institute administrative mitigation proceedings."   899 F. Supp. 2d at 1352.   Millenium clearly had no control over the issuance of notices of liquidated damages under 19 C.F.R. § 172.1 or a CBP determination of when petitions are due under 19 C.F.R. § 172.3(e) before the running of the statute of limitations.

[20] 899 F. Supp. 2d at 1345.

its lawsuits filed outside the six year time bar of the § 2415(a) statute of limitations by adding the time taken by the agency for completed administrative proceedings. The cases hold specifically that the time bar of that statute of limitations cannot be extended by the time for voluntary or non-mandatory administrative proceedings, because under the express requirements of the statute of limitations, the period runs only from a proceeding "required by law," and not from a later proceeding that is non-mandatory.

Although these cases deal with the issue of how the statute of limitations is to be calculated in relation to administrative proceedings "required by law," the Court of International Trade in *United States v. Canex Int'l Lumber Sales Ltd.*,[21] extended to the § 2637(d) doctrine of exhaustion of administrative remedies the "required by law" statute of limitations requirement under § 2415(a).  In sum, the court in *Canex* and in the instant case applied a statutory requirement for calculating the statute of limitations (for late filed actions) to determine whether an action was statutorily barred by the doctrine of exhaustion of administrative remedies for purposes of determining whether an action should be barred as premature.

---

[21] 32 CIT 407 (2008).

Millenium respectfully submits that the "required by law" statutory requirement for calculating the statute of limitations bar to late filed actions does not apply as a matter of law to the doctrine of exhaustion of administrative remedies given their different underlying statutory authority, and should not apply through judicial extension because the purposes of the statute of limitations and the doctrine of exhaustion of administrative remedies are entirely different.

Statutory Authority.  The statutory requirement in the statute of limitations for administrative remedies' being "not required by law" for calculating the statute of limitations is found in 28 U.S.C. § 2415(a):

> **(a)** Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues *or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law*, *whichever is later.*  (Emphasis added).

This statutory authority and its express requirements are specifically applicable to the time bar for late filed actions brought by the United States.  The "required by law" requirement has specific and limited applicability to the calculation of the one year addition to the limitation period for commencing an action following a "final decision in applicable administrative proceedings required by contract or by law."

22

This statutory authority and the specific requirement for a one year time bar against stale claims following an administrative decision is in marked contrast to the statutory authority and general requirement for time bar against premature actions under the doctrine of exhaustions of administrative remedies. The statute authorizing a bar under the doctrine provides:

> In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.[22]

The only statutory requirements for application of the doctrine of exhaustion of administrative remedies are that it is to apply to cases before the Court of International Trade, and that the Court "shall, where appropriate, require" the exhaustion of administrative remedies. The statute contains no reference to or limitation on types or characterizations of administrative remedies or proceedings to which is applies. Nor does the statute apply to a particular party (e.g. claims of the United States, as in § 2415(a)). No legislative history or cases that in any manner circumscribe the application of § 2637(d) to particular types of

---

[22] 28 U.S.C. § 2637(d) (2013).

administrative remedies or proceedings have been identified other than the *Canex* decision and the instant case.[23]

In sum, there is nothing in the statutory authority for the "not required by law" requirement or the statutory authority for the doctrine of exhaustion of administrative remedies that supports the conclusion that an administrative remedy must not be "permissive," "voluntary" or "non-mandatory" to be "appropriate" for the required application of the doctrine under 28 U.S.C. § 2637(d).

### Purposes of the Statute of Limitations and the Doctrine of Exhaustion of Administrative Remedies.

The purposes and nature of the statute of limitations and the doctrine of exhaustion of administrative remedies are significantly different such that judicial extension of the "required by law" requirement by the court below to the doctrine of exhaustion of administrative remedies is an inappropriate and unsupported restriction on the doctrine inconsistent with 28 U.S.C. § 2637(d).

---

[23] *See generally*, *U.S. v. Bavarian Motors*, 4 CIT 83 (1982). *See also Warner-Lambert Co. v. United States*, 24 CIT 205 (2000) in which the court found that it would be "appropriate" for plaintiff to "exhaust fully its administrative remedies" as to administrative liquidated damages cases that "were still under active agency consideration." *Id.* at 208. The court below and in *Canex* found that the *Warner-Lambert Co.* is inapposite because it involved ripeness issues in an action for injunctive relief. *U.S. v. Millenium*, 899 F. Supp. 2d at 1345. Millenium submits that this case is instructive on where the Court of International Trade has found the requirement of the doctrine to be "appropriate," and submits further that Millenium's position on the "required by law" statute of limitations requirement is not dependant on this case authority.

The Supreme Court provided in 1945 this explanation of the purpose of statutes of limitation:

> Statutes of limitation find their justification in necessity and convenience rather than in logic.  They represent expedients, rather than principles.  They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.  *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349.  They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay.  They have come into the law not through the judicial process but through legislation.  They represent a public policy about the privilege to litigate.  Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual.  He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.[24]

In *Bright v. United States*,[25] the Federal Circuit quoted the Third Circuit in outlining the "three basic purposes" of a statute of limitations as:

> First of all, a "practical and pragmatic device to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.  Secondly, limitations periods "put defendants on notice of adverse claims," and thirdly, they "prevent plaintiffs from sleeping on their rights."

---

[24] *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (footnotes omitted).

[25] 603 F.3d 1273, 1287 (Fed. Cir. 2010) (*quoting Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 471 (3d Cir. 1994)); *see also Cloer v. Sec'y of HHS*, 603 F.3d 1341, 1347 (Fed. Cir. 2010) (rev'd on other grounds) ("The general purpose of a statute of limitations is that a person should be diligent in pursuing her claim.").

The purposes behind the doctrine of exhaustion of administrative remedies, in contrast to the statute of limitations, apply to a different type of litigation bar for entirely different purposes.  The time bar of the statute of limitations relates to whether an action filed by the government after completed administrative proceedings has been filed too late under the arbitrary definition of a stale claim. The issue under the doctrine of administrative remedies and in the instant case is entirely different.  Here the question is whether the action filed by the government during pending administrative proceedings for possible administrative remedies has been filed too early.

The doctrine of administrative exhaustion, in contrast to the statute of limitations, does find its justification in "logic" rather than just "necessity and convenience."  The logic of the litigation bar under the doctrine is to protect courts from premature involvement in administrative proceedings, and to protect agencies from judicial interference, as well as to make a factual record, or to exercise the agency's discretion or apply its expertise.[26]

The reasoning behind the "required by law" or "mandatory" administrative proceeding for determining the statute of limitations under § 2415(a) was specifically noted by this Court in *United States v. Cocoa Berkau*.[27]  In that case, it was the government who argued that the petition procedure under 19 U.S.C.

---

[26] *See* discussion in Section VII A *supra*.
[27] 990 F.2d 610 (Fed. Cir. 1993).

§ 1623 for administrative relief from liquidated damages was "required by law" and therefore was the basis for calculating the one year statute of limitations in § 2415(a).   The Court found that for purposes of calculating the statute of limitations, the permissive nature of the administrative proceeding, derived from the fact that the agency was not required to exercise its discretionary authority to grant the petitioned relief, would not extend the statute of limitations because such a result would thwart the purpose of the statute's preventing stale claims by "permit[ting] a single party to postpone unilaterally and indefinitely the running of the statue of limitations."[28]

This concern, for a party's unilateral ability to subvert the purpose of the statute of limitations, is not a concern for application of the doctrine of exhaustion of administrative remedies.   An importer cannot stop the government from proceeding with the administrative remedies under 19 U.S.C. § 1623,[29] and if the government wishes to avoid the time bar for a judicial action under the doctrine of exhaustion of administrative remedies present in this case, it can and must conclude the administrative remedy, pursuant to and required by its regulations, and proceed to a judicial collections action.[30]

---

[28] *Id.* at 614, *citing United States v. Commodities Export Corp.*, 972 F.2d 1266, 1271 (Fed. Cir.1992).

[29] *See*, *e.g.*, 19 C.F.R. § 172.21.

[30] *See* Section VII D *infra*.

Unlike for the statute of limitations in § 2415(a), there is no purpose served by circumscribing the intended benefits of the doctrine of administrative exhaustion by limiting them only to administrative remedies and proceedings that are "required by law." Indeed, to the extent the administrative remedy in the instant case involved the unrealized "right" of the principal and the surety to file a petition in the administrative proceeding, it is highly preferably and entirely consistent with the "logic" and purposes of the doctrine of exhaustion of administrative remedies to require the agency to exercise its discretion and expertise in the administrative proceeding to collect liquidated damages before commencing a judicial action for the same remedy.

In sum, the Court below has cited no statutory or other justification for refusing to invoke the doctrine of exhaustion of administrative remedies for administrative remedies it has characterized as not "required by law." Its reliance on the *Ataka* and *Cocoa Berkau* cases is not well founded in that the holdings of those cases specifically concerned the express requirements for the calculation of the statue of limitations in § 2415(a), rather than any requirements found in or appropriate to § 2637(d). Further, its reliance on *Canex* is in error to the extent that holding also cited no statutory or other justification for refusing to invoke the doctrine of exhaustion of administrative remedies for administrative remedies it characterized as permissive or voluntary.

**D. CBP violated its own liquidated damages claim regulations that require, in accord with § 2637(d), the exhaustion of administrative remedies in an administrative liquidated damages collection proceeding before commencing a judicial collections action.**

> **1. CBP was required under its regulations to provide the opportunity for administrative remedies before proceeding to a judicial collection action.**

The regulations surrounding claims for liquidated damages state that when the government issues written notice to a party of a claim for liquidated damages, the government in that notice must inform the party of its right to make an administrative petition for cancellation of any claim for liquidated damages or remission or mitigation of a fine or penalty.[31]  Customs is required by regulation to give parties at least 60 days to file a petition, and is empowered to grant extensions of time "when the circumstances so warrant."[32]  If the bond principal fails to file a petition within 60 days, Customs is then authorized to issue a notice of liquidated damages to the surety, and must also give the surety 60 days to file an administrative petition.[33]

The regulations also contemplate an administrative decision which is to remain effective for payment by the parties within 60 days of the notice of the decision.  Section 172.21 provides:

---

[31] *See* 19 C.F.R. §§ 172.1-172.2(a).

[32] 19 C.F.R. §§ 172.3(b)-(c).

[33] *See* 19 C.F.R. § 172.4.

> Decisions effective for limited time.  A decision to mitigate a penalty or to cancel a claim for liquidated damages upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision unless the decision itself prescribes a different effective period.[34]

The administrative regulations applicable to liquidated damages clearly place upon Customs an obligation to permit parties who have received notice of liquidated damages the opportunity to submit an administrative petition.  While the bond holder is not obligated to avail itself of that right, the government is obligated to provide it and the surety with the opportunity to do so.  Further, a decision on the administrative remedy by regulation is to remain effective for payment within a period of 60 days.

These administrative requirements are not permissive; rather they are required by regulation, even though the choice to file a petition may be voluntary to the importer and the remedy rendered in its decision is discretionary to the agency.  There is no authority that requires or compels that these administrative remedies shall not be required under § 2637(d).

## 2.   CBP violated its own regulations by referring the matter to the Department of Justice to commence a judicial action before exhaustion of administrative remedies.

The court was in error when it found that the doctrine of exhaustion of administrative remedies does not apply because the "Practical Implication" of

---

[34] 19 C.F.R. § 172.21.

Millenium's argument is that the "Government effectively had no option but to file this action" because of the earlier decision by Millenium and the surety not to waive the statute of limitations.[35]  This conclusion is in error because the regulations provide specific procedures for such a situation that are consistent with the exhaustion of administrative remedies.  CBP did not follow these regulations before commencing its judicial action although they had the opportunity to do so.

The regulations specify a mechanism for CBP to follow in the event that the statute of limitations becomes an issue for enforcement.  Section 172.3(e) provides in connection with the filing of a petition in a liquidated damages administrative proceeding:

> If a penalty or claim for liquidated damages is assessed and fewer than 180 days remain from the date of penalty or liquidated damages notice before the statute of limitations may be asserted as a defense, the Fines, Penalties, and Forfeitures Officer may specify in the notice a reasonable period of time, but not less than 7 working days, for the filing of a petition for relief. *If a petition is not filed within the time specified, the matter will be transmitted promptly to the appropriate Office of the Chief Counsel for referral to the Department of Justice.*[36]

(Emphasis added.)

Section 172.21 of Title 19 C.F.R. provides:

> Decisions effective for limited time.  A decision to mitigate a penalty or to cancel a claim for liquidated damages upon condition that a stated amount is paid will be effective for not more than 60 days from the date of notice to the petitioner of such decision unless the decision

---

[35] *United States v. Millenium*, 899 F. Supp. 2d at 1352.
[36] 19 C.F.R. § 172.3(e) (emphasis added).

itself prescribes a different effective period.  If payment of the stated amount is not made or a petition or a supplemental petition is not filed in accordance with regulation, the full penalty or claim for liquidated damages will be deemed applicable and will be enforced by promptly transmitting the matter, after required collection action, if appropriate, to the appropriate office of the Chief Counsel for preparation for referral to the Department of Justice unless other action has been directed by the Commissioner of Customs.

It is clear under these regulations that a decision on the administrative remedy must be made and be effective for a period of 60 days before the matter is referred to the Department of Justice for a collection action after an party's failure to pay the stated liquidated damages.  The procedure is consistent with the requirements of the doctrine of exhaustion of administrative remedies as embodied in § 2637(d).

Yet, in the approximately one year after CBP requested the waivers of the statute of limitations on May 23, 2005 and the statute of limitations bar, (let alone within the 180 days before the purported running  of the statute of limitations), CBP did not provide for a date (expedited or otherwise) for the submissions of the petitions required as a matter of right and did not give notice of a decision with a 60 period for payment, all of which is contemplated in the regulations and could have been accomplished within the approximately twelve months before statute of limitations bar.  Instead, the government commenced the judicial collection action in the court below without the required exhaustion of administrative remedies.

It was not at all the case, contrary to the conclusion of the court below, that if the government "had waited to file suit — as Millenium argues it was required to do — the Government would have faced the very real possibility that, as in *Cocoa Berkau*, the statute of limitations would have barred the liquidated damages claims that are the subject of this action."[37]  The government had approximately one year from its request for a waiver of the statute of limitations to complete the administrative process in which the regulations provide for procedures to be expedited within 180 days of the running of the statute.[38]

Thus, the court's refusal to apply the requirements of § 2637(d) to this case also countenances CBP's failure to follow its own regulations on when a collection action is to occur in the administrative scheme.

The court below also erred in concluding that defendants' decision not to waive their rights under the statute of limitations justified the commencement of the instant action without exhaustion of administrative remedies.  It was incorrect

---

[37] *United States v. Millenium*, 899 F. Supp. 2d at 1352.

[38] The court below seemed to imply that Millenium and the surety has some sort of obligation to "initiate" mitigation proceedings on its own initiative before the government's judicial collection action.  ("Nothing…even hints at the existence of any pending mitigation proceedings initiated by Millenium or its surety."  899 F. Supp. 2d at 1351.  No such action would make sense where CBP had indicated that the administrative liquidated damages collection action was in "holding status" pending the protest and judicial classification appeals and where any petition could rely principally, but not exclusively, on those pending classification determinations.

for the court to prejudice defendants from their lawful reliance on the protections afforded under the statute of limitations.

The statute of limitations was enacted by Congress in 1966 to "fill a need which exists in the law today."  The legislative history adopted as "a very important consideration and the principal basis for the bill" the GAO report which stated, "[A]s a matter of fairness, persons dealing with the Government should have some protection against an action by the Government when the act occurred many years previously."  (JA-183).  For the court below to use defendants' reliance on the protections provided in the statute of limitations as a basis for denying protection intended under § 2637(d) truly flies in the face of Congressional intent.

Such reasoning, moreover, is contrary to general judicial holdings as well as earlier precedent of the Court of International Trade concerning the government's treatment of a waiver of the statute of limitations.  The courts generally invalidate government rules or policies which would penalize private parties for the exercise of their statutory rights.  In *Livadas v. Bradshaw*,[39] for example, the Supreme Court held that where an employee had a statutory right to engage in collective bargaining under the NLRA, a labor commission policy barring enforcement of claims when the terms of employment were subject to a collective bargaining

---

[39] 512 U.S. 107 (1994).

agreement is unlawful, because it placed a penalty of the employee's exercise of her statutory right.[40]

With specific respect to a waiver of the statute of limitations, the Court of International Trade in *United States v. Jean Roberts of Cal., Inc.*[41] ruled that Customs could not require a defendant importer to sign a waiver of the statute of limitations as a condition for CBP to consider administrative remedies with mitigating factors and other statutory defenses. In that case, the government brought an enforcement action under 19 U.S.C. § 1592 to recover a civil penalty for violations of NAFTA preferential duty rate regulations. During the administrative proceedings, the defendant importer had submitted a petition for remission or mitigation of the penalty based on inability to pay and upon a claimed exemption from penalty under the Small Business Regulatory Enforcement Act of

---

[40] The Supreme Court stated that the state commission's policy "has presented Livadas and others like her with the choice of having state-law rights…enforced or exercising the [statutory] right to enter into a collective-bargaining agreement with an arbitration clause. This unappetizing choice, we conclude, was not intended by Congress, and cannot ultimately be reconciled with a statutory scheme premised on the centrality of the right to bargain collectively and the desirability of resolving contract disputes through arbitration." *Livadas v. Bradshaw*, 512 U.S. 107, 117. *See also*, *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir. 1988), in which the Court of Appeals for the Third Circuit held that because a debtor had a statutory right to convert a Chapter 7 (involuntary bankruptcy) proceeding to a Chapter 11 (voluntary bankruptcy) proceeding at any time, the court should not find that to do so would remove the debtor's ability to make claims against the petitioners for bad faith filing, as this would constitute a "penalty for exercising its statutory right to convert promptly."

[41] 30 CIT 2027 (CIT 2006).

1996.[42]  In its March 29, 2002 response to the defendant's petition, CBP noted that "the statute of limitations in this case will begin to expire on August 29, 2002," and stated that "[w]e decline to address petitioner's claims of (1) inability to pay; and (2) status as a small business entity under the Small Business Regulatory Enforcement Act of 1996 … [s]aid claims will only be addressed if petitioner submits a two-year waiver of the statute of limitations."[43]

The Court of International Trade held in *Jean Roberts* held that "[t]he demand by Customs that defendant waive the applicable statute of limitations for a two-year period in return for any consideration of these two claims for relief was neither justified under the applicable statute and regulations nor consistent with principles  of equity and fairness."[44]  The Court noted that Customs regulations attach certain consequences to the impending expiration of the statute of limitations, and that there is no provision in the regulations permitting Customs to condition consideration of issues raised in a petition upon the granting of a statute of limitations waiver by petitioner.[45]  In making that finding, the Court paid special note to the fact that the potential expiration of the statute of limitations was CBP's own fault: "Customs was the source of the delay."[46]  The defendant submitted its

---

[42] *Id.* at 2034.

[43] *Id.* at 2036.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 2037.

petition in May 2001, and Customs did not ask for the statute of limitations waivers until July 2001 (and then again in December 2001); Customs did not issue its decision until April 2002. Given that the statute of limitations expired at the end of August 2002, the Court ruled that CBP had opportunity to consider the claims in the petition, and that refusal to do so was neither reasonable nor lawful.[47]

Contrary to the principles established in *Jean Roberts*, the Court below treated defendants' refusal to waive the statute of limitations as grounds for denial of statutory protections under § 2637(d). The Court below improperly conditioned defendants' rights and the exhaustion of administrative remedies required under § 2637(d) on the waiver of their rights under the statute of limitations, even though the request for the waiver preceded the statute of limitations time bar by approximately one year. In sum, the Court below erred by finding the doctrine of exhaustion of administrative remedies does not bar the commencement of the instant action because the defendants did not waive the statute of limitations.

> **E.    The fact that a right to recover liquidated damages may accrue before exhaustion of administrative remedies does not allow the government to commence an action to recover liquidated damages before the exhaustion of administrative remedies as required by § 2637(d).**

The court below relies heavily on *United States v. Ataka America* where the administrative remedy of a protest was found not to be mandatory because the

---

[47] *Id.*

government's right to file in court was not dependent on the results of the administrative proceeding:

> Section 1505(c), Title 19, United States Code gives the United States the right to sue to collect liquidated duties whether a protest proceeding is pending or not.  While this appeared to the court in *Heraeus-Amersil*[48] to be a waste of administrative and judicial time, as well as basically unfair, Congress did not agree.  It made the right to sue immediate.  The right to sue is not delayed by administrative protests.  Thus, proceedings to resolve protests are not mandatory for the purpose of government action under 28 U.S.C. § 1582.[49]

The basic concept behind this reasoning is that the payment obligation of the importer and the surety exists independent of the administrative remedy, and therefore a judicial action based on those obligations may not be delayed by those administrative remedies.

The point at which a cause of action accrues, however, should not be confused with the effect of lawful restrictions and conditions on when a party may proceed on those rights in a judicial action.  The accrual of a right on which an action is based does not per se give rise to a party's right the ability to commence an action at any time it wishes.  Different laws often place conditions on when an accrued right may be pursued.  For example, 19 U.S.C. § 1505, the statute discussed in *Ataka America* which gives the government the right to collect duties and fees upon liquidation, itself provides:  "Duties, fees, and interest *determined to*

---

[48] *United States v. Heraues-Amersil, Inc.*, 671 F.2d 1356 (C.C.P.A. 1982).
[49] *United States v. Ataka America, Inc.*, 826 F. Supp. at 502.

*be due* upon liquidation or reliquidation *are due 30 days after issuance of the bill for such payment.*"  (Emphasis added.)

Similarly, § 2637(d) conditions the timing of judicial actions in the Court of International Trade with the time bar against premature actions under the doctrine of exhaustion of administrative remedies.  The statute presumes the right of action has accrued, or it would not have to require the exhaustion of administrative remedies before proceeding with the judicial action.  What the statute does is condition the timing of the action to enforce accrued rights of action to achieve the efficiencies and other purposes underlying the doctrine.  The mere fact that the government may have had an accrued right of action against Millenium and the surety in the instant action does not vitiate the requirements of § 2637(d); if it did, § 2637(d) would be rendered a nullity as it only applies to actions where a right of action has already accrued.

## IX.    CONCLUSION

For the foregoing reasons, Appellant Millenium Distribution Lumber Co., Ltd. respectfully requests that the Court of International Trade's order denying the Motion for Judgment on the Pleadings be reversed and that the case below be dismissed.

Respectfully submitted,

/s/ Joel R. Junker
Joel R. Junker
Joel R. Junker & Associates
1191 Second Avenue, Suite 1800
Seattle, Washington  98101
Telephone:  (206) 621-7878

Dated:  July 17, 2013

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

*United States of America v.*
*Millenium Lumber Distribution Co. LTD. And*
*XL Specialty Insurance Company*,
         2012 Ct. Intl. Trade LEXIS 154 ...........................................................Add. 1



**UNITED STATES OF AMERICA, Plaintiff, v. MILLENIUM LUMBER DISTRI-
BUTION CO. LTD. and XL SPECIALTY INSURANCE COMPANY, Defendants.
XL SPECIALTY INSURANCE COMPANY, Cross-Claimant, v. MILLENIUM
LUMBER DISTRIBUTION CO. LTD., Cross-Defendant.**

**Court No. 06-00129**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**899 F. Supp. 2d 1340; 34 Int'l Trade Rep. (BNA) 2345; 2012 Ct. Intl. Trade LEXIS
154; SLIP OP. 2012-153**

**December 18, 2012, Decided**

**SUBSEQUENT HISTORY:**    As Corrected January 9,
2013.
Summary judgment granted by United States v. Milleni-
um Lumber Distrib. Co., 887 F. Supp. 2d 1369, 2013 Ct.
Intl. Trade LEXIS 1 (Ct. Int'l Trade, Jan. 2, 2013)

**PRIOR HISTORY:** Millenium Lumber Distrib. v.
United States, 558 F.3d 1326, 2009 U.S. App. LEXIS
4523 (Fed. Cir., 2009)

**DISPOSITION:** [**1]   Defendant Millenium's Motion
for Judgment on the Pleadings is denied.

**COUNSEL:** Aimee Lee, International Trade Field Of-
fice, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice, of New York, New York, argued
for Plaintiff. With her on the brief were Tony West, As-
sistant Attorney General, and Barbara S. Williams, At-
torney in Charge, International Trade Field Office. Of
counsel on the brief was Christopher Shaw, Office of the
Assistant Chief Counsel, Bureau of Customs and Border
Protection, U.S. Department of Homeland Security, of
New York, New York.

Joel R. Junker, Joel R. Junker & Associates, of Seattle,
Washington, argued for Defendant Millenium Lumber
Distribution Co. Ltd. With him on the brief was William
N. Baldwin.

**JUDGES:** Delissa A. Ridgway, Judge.

**OPINION BY:** Delissa A. Ridgway

**OPINION**

[*1342] RIDGWAY, Judge:

The Government commenced this action against de-
fendant Millenium Lumber Distribution Co. Ltd. and its
surety, defendant XL Specialty Insurance Company, to
collect more than $1.8 million in liquidated damages. *See*
Complaint ∂∂ 1, 21, 31, 42, 44. According to the Gov-
ernment, Millenium breached the terms of its customs
bonds by not providing required export permits to the
Bureau of Customs and Border Protection. [**2] [1] *See
Id.* ∂∂ 17-20, 28-31, 39-42. The Government claims that,
as a consequence of this alleged breach, Millenium and
XL are jointly and severally liable for liquidated damag-
es. *See Id.* ∂∂ 10-11.

1   The U.S. Customs Service -- formerly part of
the U.S. Department of the Treasury -- was trans-
ferred to the U.S. Department of Homeland Secu-
rity as part of the Homeland Security Act of
2002. *See* Bull v. United States, 479 F.3d 1365,
1368 n.1 (Fed. Cir. 2007). The agency is now
commonly known as U.S. Customs and Border
Protection, and is referred to as "Customs" here-
in.

Pending before the Court is Millenium's   [*1343]
Motion for Judgment on the Pleadings, in which Milleni-
um seeks to dismiss this action for failure to state a claim

upon which relief can be granted. *See* USCIT Rule 12(b)(5); Defendant Millenium Lumber Distribution Co., Ltd.'s Motion for Judgment on the Pleadings ("Def.'s Motion to Dismiss") at 2, 13-14; Supplemental Submission of Defendant Millenium Lumber Distribution Co., Ltd.'s Motion for Judgment on the Pleadings ("Def.'s Supp. Brief") at 1. According to Millenium, the Government "failed to exhaust administrative remedies" because it brought this action to collect liquidated damages "prior [**3] to the completion of" mitigation proceedings that Millenium maintains were "pending" at the agency level. Def.'s Motion to Dismiss at 2. Millenium contends that this action is therefore "premature," and subject to dismissal. *Id.*; *see also* Defendant Millenium Lumber Distribution Co. Ltd.'s Reply to Plaintiff's Response to Motion to Dismiss ("Def.'s Reply Brief") at 3 (explaining that Millenium "claims that this suit is premature and barred by the doctrine of exhaustion of administrative remedies"); Def.'s Supp. Brief at 1 (stating that "motion requests dismissal . . . for failure to state a cause of action upon which relief can be [granted] based on the grounds that this action was commenced before the conclusion of related administrative proceedings and therefore is in violation of the doctrine of exhaustion of administrative remedies").

The Government, in turn, argues that administrative mitigation proceedings are not a condition precedent to the Government's institution of a civil action to collect liquidated damages -- particularly "in a situation such as this, where [tariff] classification is contested and the constraint of [the] statute of limitations would abrogate the Government's [**4] legal right to recover liquidated damages" if administrative mitigation proceedings were required. *See* Government's Opposition to Defendant's, Millenium Lumber Distribution Co. Ltd., Motion for Judgment on the Pleadings ("Pl.'s Response Brief") at 2-3, 11; *see also* The Government's Response to Defendant's, Millenium Lumber Distribution Co. Ltd., Supplemental Submission ("Pl.'s Supp. Brief") at 2, 4, 16. The Government contends that, in any event, Millenium should not be heard to complain, because -- the Government argues -- the company at no time took action to institute mitigation proceedings at the agency level. *See* Pl.'s Response Brief at 6, 9-11, 13; Pl.'s Supp. Brief at 14-15.

Jurisdiction lies under 28 U.S.C. ß 1582(2) (2000). [2] For the reasons outlined below, Millenium's Motion for Judgment on the Pleadings must be denied.

> 2   Except as otherwise indicated, all citations to federal statutes herein are to the 2000 edition of the United States Code. Similarly, all citations to federal regulations are to the 2000 edition of the Code of Federal Regulations.

# I. Background

Between late April 2000 and early January 2001, Millenium entered 168 entries of certain softwood lumber products into [**5] the United States from Canada. *See* Complaint ∂∂ 9, 14, 25, 36. The entries were secured by three bonds issued by Millenium's surety (XL Specialty Insurance Company, or its predecessor, Intercargo Insurance Company). *See Id.* ∂∂ 5, 10-11. As a condition of each bond, Millenium and its surety agreed that they would comply with all customs laws and regulations. *Id.* ∂ 11. They also agreed that they would be jointly and severally liable for liquidated damages in the event of a default. *Id.*

Millenium entered all of the merchandise at issue under heading 4418 of the Harmonized Tariff Schedule of the United States ("HTSUS") (2000). [3] *See* Complaint ∂∂ 15, 26, 37. Following entry, Customs classified the merchandise under HTSUS heading 4407. *See Id.* ∂∂ 16, 27, 38. [4] Merchandise falling within heading 4407 is subject to the U.S.-Canada Softwood Lumber Agreement, and requires export permits issued by the government of Canada for entry into the United States. *See Id.* ∂∂ 16, 27, 38; 19 C.F.R. ß 12.140; 19 C.F.R. ß 113.62(k).

> 3   Heading 4418 covers "[b]uilders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes." Heading 4418, HTSUS.
>
>    All citations [**6] to the HTSUS herein are to the 2000 edition, which is identical to the 2001 edition in all relevant respects.
> 4   Heading 4407 covers "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6mm." Heading 4407, HTSUS.

Customs issued Notices of Action informing Millenium that the Softwood Lumber Agreement required the company to provide proof of issuance of the requisite export permits and stating that, absent Millenium's submission of the necessary documentation, liquidated damages would be assessed. *See* Complaint ∂∂ 17-18, 28-29, 39-40; *Id.*, Exhs. 5, 11 (Notices of Action, or "CF-29s").

Millenium failed to provide Customs with proof of the required permits. Customs therefore issued Liquidated Damages Notices to Millenium covering all 168 entries. *See* 19 C.F.R. ß 172.1(a) [5]; Complaint [*1344] ∂∂ 19-20, 30-31, 41-42; *Id.*, Exhs. 6, 9, 12 (three Notices of Penalty or Liquidated Damages Incurred and Demand for Payment) ("Liquidated Damages Notices," or "CF-5955As"). The Liquidated Damages Notices informed Millenium of the amount of liquidated damages assessed. *See* Complaint, Exhs. 6, 9, 12. In addition, the Liquidated

899 F. Supp. 2d 1340, *; 34 Int'l Trade Rep. (BNA) 2345;
2012 Ct. Intl. Trade LEXIS 154, **; SLIP OP. 2012-153

Damages Notices [**7] advised Millenium of the company's right to petition Customs for mitigation of the liquidated damages assessments, as well as the procedure for the filing of such petitions. *See Id.*, Exhs. 6, 9, 12. In particular, the Liquidated Damages Notices specified that Millenium had 60 days to pay the liquidated damages assessments or to file a petition for mitigation with Customs. *See Id.*, Exhs. 6, 9, 12.

5    19 C.F.R. ß 172.1(a) provides:

> Notice of liquidated damages incurred. When there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.

19 C.F.R. ß 172.1(a).

No petition for mitigation proceedings was ever filed; nor did either Millenium or its surety make any payment on the liquidated damages assessments. *See* Complaint ∂∂ 22, 33, 44.

In the meantime, Millenium filed protests with Customs contesting the agency's classification of the company's merchandise under HTSUS heading 4407. *See* [**8] Def.'s Motion to Dismiss at 5 n.1. In two letters (dated August 24, 2001 and October 9, 2001), Customs agreed -- at Millenium's request -- to defer action on the agency's liquidated damages claims against Millenium (which arose out of Customs' classification determination) while the company pursued its challenge to that determination. *See Id.* at 5-6; *Id.* at Exhs. 1, 3 (Customs letters dated August 24, 2001 and October 9, 2001).

Customs denied Millenium's protests, and Millenium brought suit in this court challenging that denial. *See* Def.'s Motion to Dismiss at 6; Millenium Lumber Distrib. Ltd. v. United States, Court No. 02-00595 (filed Sept. 12, 2002). In light of Millenium's litigation challenging Customs' classification determination, Customs continued to defer action on the agency's liquidated damages claims. However, in late May 2005, with the six-year statute of limitations soon to expire, Customs notified Millenium and its surety that -- although Customs was aware that the classification issue had not yet been finally resolved, and although the agency would be will-

ing to allow the classification litigation to run its course -- Customs would need to take appropriate action to preserve [**9] the agency's liquidated damages claims, unless Millenium and/or its surety made full payment or the two executed waivers of the statute of limitations within 30 days. *See* Complaint ∂∂ 21, 32, 43; *Id.*, Exh. 7 (letters to Millenium and surety, dated May 23, 2005). [6]

6    A complaint to recover liquidated damages must be filed "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." 28 U.S.C. ß 2415(a).

Both Millenium and its surety declined to execute waivers of the statute of limitations. Similarly, neither made payment of the liquidated damages assessed. *See* Complaint ∂∂ 22, 33, 44; Pl.'s Response Brief at 10. Roughly one year later, the Government commenced this action against Millenium and the surety, to collect the liquidated damages assessed.

In the meantime, Customs' classification determination has been sustained by this court, which, in turn, was affirmed on appeal. *See* Millenium Lumber Distrib. Ltd. v. United States, 31 CIT 575 (2007), *aff'd*, 558 F.3d 1326 (Fed. Cir. 2009) (holding that Millenium's merchandise is properly classified under [**10] HTSUS heading 4407). Thus, there is no longer any dispute that Millenium's merchandise is properly classified under heading [*1345] 4407, and, as such, is subject to the Softwood Lumber Agreement.

## II. Standard of Review

In reviewing a motion to dismiss for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." Amoco Oil Co. v. United States, 234 F.3d 1374, 1376 (Fed. Cir. 2000); *see generally* USCIT Rule 12(b)(5). "Dismissal for failure to state a claim is proper only when it is beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief." Amoco Oil, 234 F.3d at 1376. Dismissal under Rule 12(b)(5) is thus proper only if the plaintiff's allegations of fact are not "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). At the same time, a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) [**11] (citation omitted). "[O]nly a complaint that states

a plausible claim for relief survives a motion to dismiss." *Id.*, 556 U.S. at 679.

## III. Analysis

Distilled to its essence, Millenium's argument is that the Government failed to exhaust administrative remedies because the Government filed the instant action to collect liquidated damages "prior to the completion of" mitigation proceedings that Millenium maintains were "pending" at the agency level. Def.'s Motion to Dismiss at 2. Millenium contends that this action is therefore "premature," and must be dismissed. *Id.*

However, the exact same argument has been previously considered -- and rejected -- by this court in Canex, a case strikingly similar to the case at bar. *See* United States v. Canex Int'l Lumber Sales Ltd., 32 CIT 407 (2008). Millenium's argument also cannot be reconciled with other relevant decisions of this court and the Court of Appeals, which highlight the permissive, voluntary, and discretionary nature of the administrative mitigation proceedings in question. *See* United States v. Cocoa Berkau, 990 F.2d 610, 614-16 (Fed. Cir. 1993); United States v. Ataka America, Inc., 17 CIT 598, 605, 826 F. Supp. 495, 501-03 (1993). Moreover, [**12] the two cases on which Millenium principally relies are simply inapposite. *See* Warner-Lambert Co. v. United States, 24 CIT 205 (2000); United States v. Bavarian Motors, Inc., 4 CIT 83, 85-86 (1982). Millenium's motion to dismiss thus has no sound basis in the law. *See* section III.A, *infra*.

Millenium's case is just as weak on the facts. As summarized below, contrary to Millenium's repeated assertions, no mitigation proceedings were ever commenced at the agency level. Simply stated, Millenium never availed itself of the "remedy" that it now claims should have been exhausted. *See* section III.B, *infra*.

Finally, as explained below, the scheme that Millenium advocates is entirely unworkable, and would have the potential to produce dire results in cases such as this. The practical realities of administrative process and litigation thus bear out the correctness of the Government's legal position here. *See* section III.C, *infra*.

A. The Legal Merits of Millenium's Argument

The gravamen of Millenium's motion to dismiss is that the Government's commencement of this action "is in violation of the doctrine of exhaustion of administrative remedies." Def.'s Supp. Brief at 1; *see also* Def.'s Motion to Dismiss [**13] at 2. Emphasizing that the Court of International Trade is directed, "where appropriate," [*1346] to "require the exhaustion of administrative remedies," Millenium argues that the Government's attempt to collect liquidated damages is "prema-ture and untimely," because -- Millenium maintains -- the company should have been allowed to engage in mitigation proceedings at the agency level. *See* Def.'s Motion to Dismiss at 2, 7, 13; 28 U.S.C. ß 2637(d) (providing for application of doctrine of exhaustion of administrative remedies in "appropriate" cases); 19 U.S.C. ß 1623(c); 19 C.F.R. ß 172.1(b). [7] According to Millenium, the Government's asserted failure to exhaust administrative remedies warrants dismissing this action for failure to state a claim upon which relief can be granted. *See* Def.'s Motion to Dismiss at 1-2; Def.'s Supp. Brief at 1.

[7]  The regulations provide that a principal or its surety may file an application (a petition) for mitigation seeking relief from the assessment of liquidated damages pursuant to 19 U.S.C. ß 1623(c). *See* 19 C.F.R. ß 172.1(b).

Under 19 U.S.C. ß 1623(c):

The Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any [**14] charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

19 U.S.C. ß 1623(c). *See also* 19 C.F.R. ß 172.1(b) (stating that a petition for relief may be in any form); 19 C.F.R. ß 172.2(b) (stating that petition for relief "shall be filed within 60 days from the date of mailing of the notice of the liability for liquidated damages").

As the Government notes, however, this precise argument was squarely rejected in Canex (a case with facts virtually identical to those here), which, in turn, relied heavily on Cocoa Berkau and Ataka. *See* Pl.'s Supp. Brief at 3-6, 8-9, 13; Canex, 32 CIT at 408-09 (discussing, *inter alia*, Cocoa Berkau, 990 F.2d at 614-16; Ataka, 17 CIT at 605, 826 F. Supp. at 501-03); *see also* Pl.'s Response Brief at 6-11, 13-14 (discussing Cocoa Berkau and Ataka); Pl.'s Supp. Brief at 5, 8-16 (same).

Like Cocoa Berkau and Ataka before it, Canex underscored that administrative proceedings on a petition for mitigation are not only informal, but also permissive and voluntary, and that relief is granted at the discretion [**15] of Customs. *See* Cocoa Berkau, 990 F.2d at 615-16 (emphasizing that mitigation proceedings before Customs are "completely voluntary" and that agency's deci-

Case: 13-1203   Document: 27   Page: 56   Filed: 07/17/2013

Page 5

899 F. Supp. 2d 1340, *; 34 Int'l Trade Rep. (BNA) 2345;
2012 Ct. Intl. Trade LEXIS 154, **; SLIP OP. 2012-153

sion whether to grant relief is "discretionary"; characterizing mitigation proceedings as "discretionary and summary [in] nature," and highlighting "marked contrast" with other "formal and time-consuming administrative proceedings"); Ataka, 17 CIT at 605-06, 826 F. Supp. at 502-03 (noting that mitigation proceedings are "voluntary," and that decision whether to grant relief is at agency's "discretion"; describing mitigation proceedings as "discretionary and informal" and "not mandatory"; Canex, 32 CIT at 408-09 (explaining that mitigation proceedings are "voluntary and informal, and relief is granted at the discretion of Customs"; characterizing such proceedings as "permissive").

Emphasizing the "discretionary and summary" nature of mitigation proceedings, the Court of Appeals held in Cocoa Berkau that the Government is not required to resolve a pending petition for mitigation before filing an action to recover liquidated damages in this court. *See Cocoa Berkau*, 990 F.2d at 614-16 (rejecting Government argument that surety's commencement [**16] of voluntary mitigation proceedings precluded Government from filing civil action to collect liquidated damages, and thus tolled statute of limitations). To the same effect, the court in Ataka ruled that, because administrative mitigation proceedings are "discretionary and informal," [*1347] they "need not be resolved in order for the government to recover liquidated damages under a bond through court action." Ataka, 17 CIT at 605, 826 F. Supp. at 502 (involving Government action attempting to recover customs duties from importer's successor and surety).

Hewing to Cocoa Berkau and Ataka, the Canex court expressly held that "the Government was not required to postpone its filing of [an action for liquidated damages] until [the importer at issue] exercised its right to request mitigation proceedings." Canex, 32 CIT at 409. Millenium has made no showing that a different outcome should obtain here. [8]

8   The judges of the Court of International Trade are in no way bound by the decisions that their colleagues on the court have rendered in prior cases. *See generally Algoma Steel Corp., Ltd. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989). However, "[w]henever [a judge] considers the holding and [**17] reasoning of a previous opinion rendered by a different Judge of the CIT [in a similar case], [he or she] regards such opinions as persuasive." *Nucor Corp. v. United States*, 32 CIT 1380, 1447 n.47, 594 F. Supp. 2d 1320, 1380 n.47 (2008); *see also, e.g., D & L Supply Co. v. United States*, 22 CIT 539, 540 (1998) (same); *Buna v. Pacific Far East Line, Inc.*, 441 F. Supp. 1360, 1365 (N.D. Cal. 1977) (explaining

that "[j]udges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances").

Millenium seeks to make much of the fact that the issue presented in Cocoa Berkau was whether the Government's action to recover liquidated damages was time-barred. Millenium asserts that this action is thus distinguishable from Cocoa Berkau because the pending motion involves the applicability of the doctrine of exhaustion, while Cocoa Berkau involved the applicability of a particular statute of limitations. *See* Def.'s Reply Brief at 1-5, 7; Def.'s Supp. Brief at 3-6, 8-9. But Millenium has failed to explain why that distinction should compel a different result. *See generally* Pl.'s Supp. Brief at 4-5, 8-14, 17-19. [**18] Indeed, the holding in Cocoa Berkau was premised broadly on the Court of Appeals' determination that mitigation proceedings are so voluntary and so discretionary that they play no role in determining *when* the Government may sue for liquidated damages. *See Cocoa Berkau*, 990 F.2d at 615-16 (explaining nature of mitigation proceedings and why such proceedings do not bar initiation of civil action by Government to collect liquidated damages). As Canex recognized, the linchpin in Cocoa Berkau (and Ataka) was the permissive, voluntary, and discretionary nature of the administrative mitigation proceedings at issue in those cases -- the same administrative proceedings at issue in Canex and here. Canex, 32 CIT at 408-09; *see also Cocoa Berkau*, 990 F.2d at 614-16; Ataka, 17 CIT at 605-06, 826 F. Supp. at 501-03. Contrary to Millenium's assertions, Cocoa Berkau cannot be cabined to its facts.

Millenium stakes its motion to dismiss on two cases that it labels "directly on point." Def.'s Reply Brief at 10; *see also* Def.'s Motion to Dismiss at 7-11 (discussing the two cases); Def.'s Reply Brief at 10-13 (same); Def.'s Supp. Brief at 5-8 (same). The first is Warner-Lambert, in which the court dismissed [**19] an action for failure to exhaust administrative remedies. *See generally* Warner-Lambert, 24 CIT at 208-11. According to Millenium, Warner-Lambert stands for the proposition that dismissal of an action such as the instant case "is proper where administrative proceedings involving liquidated damages have not been completed at the time the court action was commenced." Def.'s Motion to Dismiss at 7. As Canex explained, however, Warner-Lambert lent no support to the plaintiff in that case; and it is [*1348] equally unavailing for Millenium here. *See* Canex, 32 CIT at 409.

The plaintiff in Warner-Lambert brought an application for a temporary restraining order and preliminary injunction premised on an alleged -- and, as of that time, not-yet-realized -- threat of possible sanctions, which, it was claimed, would have a "detrimental impact" on the plaintiff's operations. Warner-Lambert, 24 CIT at 205-

Case: 13-1203    Document: 27    Page: 57    Filed: 07/17/2013

Page 6

899 F. Supp. 2d 1340, *; 34 Int'l Trade Rep. (BNA) 2345;
2012 Ct. Intl. Trade LEXIS 154, **; SLIP OP. 2012-153

06. The purported threat of sanctions arose out of various liquidated damages assessments made by Customs. *Id.*, 24 CIT at 205-06. The Government established that some of the liquidated damages claims at issue were the subject of petitions for mitigation filed by the plaintiff that were still pending before [**20] Customs. *Id.*, 24 CIT at 206-08. Further, although the administrative process was complete as to some of the liquidated damages claims, none had been referred to the Department of Justice for initiation of a collection action. *Id.*, 24 CIT at 207. Moreover, there were no actual sanction proceedings initiated against the plaintiff. *Id.*

The Warner-Lambert court granted the Government's motion to dismiss. In so doing, the court discussed the constitutional requirement of ripeness. Warner-Lambert, 24 CIT at 209. In that context, the court noted that, "where appropriate," the exhaustion of administrative remedies is required. *Id.* (discussing 28 U.S.C. ß 2637(d)). The Warner-Lambert court concluded that, in the case before it, the harm that the plaintiff alleged was merely speculative, because, at the time, there was at most a threat of sanctions, and because the administrative process was not yet complete. *Id.*, 24 CIT at 209. The court explained that, under such circumstances, it could not "discern the kind of threat of immediate, irreparable injury necessary to grant or sustain the extraordinary equitable relief" that a temporary restraining order or preliminary injunction represents. *Id.*, 24 CIT at 208. [**21] Dismissing the plaintiff's action, the Warner-Lambert court found that it would be "appropriate" for plaintiff to "exhaust fully its administrative remedies" as to those cases that remained pending in the administrative pipeline. *Id.*, 24 CIT at 209.

Warner-Lambert bears no resemblance to the case at bar. This is an action brought by the Government to collect unpaid liquidated damages -- not an action for a temporary restraining order and preliminary injunction, brought against the Government. The action here is based on a breach of a condition of customs bonds (specifically, Millenium's failure to present proof of the permits required by the Softwood Lumber Agreement); and there is nothing unripe or speculative as to that claim. *See* Canex, 32 CIT at 409 (in case strikingly similar to case at bar, rejecting same argument raised by Millenium here, and ruling that "the . . . case is ripe for action"). In contrast, the Warner-Lambert court's decision requiring the plaintiff in that case to complete pending administrative proceedings reflected the court's determination that -- unless and until the plaintiff had a better understanding of the practical effects (if any) of its alleged non-compliance [**22] with the terms of the bond -- the plaintiff's claim was not ripe for judicial review, because there was no way for the court to determine whether the plaintiff faced the type of immediate, irreparable injury

required for issuance of a preliminary injunction. *See generally* Pl.'s Response Brief at 11-12; Pl.'s Supp. Brief at 5, 19-21. [9] As [*1349] ammunition for Millenium's argument, Warner-Lambert misses the mark.

> 9   Moreover, in contrast to Warner-Lambert, in this case not only are there no administrative mitigation proceedings pending, but, in fact, no such proceedings were ever initiated. *See* section III.B, *infra.*

The second case on which Millenium relies is Bavarian Motors. *See generally* Def.'s Motion to Dismiss at 9-11 (discussing Bavarian Motors, 4 CIT at 85-86); Def.'s Reply Brief at 10-13 (same); Def.'s Supp. Brief at 5-8 (same). But, like Warner-Lambert, Bavarian Motors too fails to advance Millenium's cause, for reasons that are summarized in Canex. *See* Canex, 32 CIT at 409.

In Bavarian Motors, the court held that the Government's action to collect liquidated damages from a surety was premature in light of the surety's pending protest of the liquidated damages claims at the administrative [**23] level. *See* Bavarian Motors, 4 CIT at 85-86. In the instant case, however, neither Millenium nor the surety protested the demand for the liquidated damages. [10] Further, as Canex observes, Ataka emphasized that Bavarian Motors was decided prior to the 1984 effective date of 19 U.S.C. ß 1505(c), which gave the Government an immediate right to sue for liquidated damages, notwithstanding the pendency of protest proceedings. *See* Canex, 32 CIT at 409 (citing Ataka, 17 CIT at 607, 826 F. Supp. at 503 ("[S]ince the effective date of 19 U.S.C. ß 1505(c) [now 19 U.S.C. ß 1505(b)], completion of protest proceedings has not been a requirement for suit to collect.")). Millenium's reliance on Bavarian Motors is thus misplaced. [11]

> 10   The Government states that -- to the extent that the court's holding in Bavarian Motors was premised on the court's determination that the defendant surety in that case had a right to file a protest concerning the Government's demand for payment against the bond (*see* Bavarian Motors, 4 CIT at 85) -- subsequent decisions from both the Court of Appeals and this court have established that the assessment of liquidated damages does not constitute a "charge or exaction" and, thus, [**24] that it cannot be the subject of a protest. *See* Pl.'s Response Brief at 13 n.7 (citing 19 U.S.C. ß 1514(a)(3); United States v. Utex Int'l, Inc., 857 F.2d 1408, 1413-14 (Fed. Cir. 1988); United States v. Toshoku America, Inc., 879 F.2d 815, 818 (Fed. Cir. 1989); Pope Prods. v. United States, 15 CIT 279, 281-83 (1991) (analyzing Utex and Toshoku, and rejecting argument that a

"Notice of Demand for Liquidated Damages is a protestable decision")).

11   As explained above, the doctrine of exhaustion of administrative remedies does not apply in circumstances such as these; thus, there was no requirement that administrative mitigation proceedings be complete before the Government could bring this civil action to collect liquidated damages. However, even if the doctrine of exhaustion did apply, the Government notes that one or more of the established exceptions might well operate to excuse a failure to exhaust. *See generally* Pl.'s Response Brief at 15-16.

For example, it appears that requiring exhaustion (*i.e.*, requiring the Government to now allow Millenium to file and pursue a petition for mitigation) would have been a "useless formality," because any defenses to liability that Millenium may [**25] have could be asserted in this proceeding. Similarly, the potential relief that would have been available to Millenium in a mitigation proceeding was a reduction in the amount of liquidated damages demanded. *See* 19 C.F.R. ß 172.21. However, to the extent that Millenium has continued to believe that it has grounds for mitigation and should not be required to pay the full amount of liquidated damages that was assessed, the company has been free to make its case to the Government at any point during the pendency of this action and to make an appropriate offer of settlement, to attempt to resolve the matter amicably. Finally, Millenium has failed to make clear what -- if any -- additional facts it claims need to be developed at the administrative level. R.R. Yardmasters of Am. v. Harris, 721 F.2d 1332, 1338-39, 232 U.S. App. D.C. 171 (D.C. Cir. 1983). The fundamental facts of this case -- like those in Canex, a nearly identical case -- are fully-developed, and relatively straightforward: Millenium imported goods that were subject to the Softwood Lumber Agreement, but failed to provide proof of the permits required under that agreement. Given these circumstances, there would be no apparent point to requiring the Government [**26] to allow Millenium to file a petition and pursue administrative mitigation proceedings before the agency.

In sum, there is no substance to Millenium's position that the Government may [*1350] file a civil action to collect liquidated damages only after mitigation proceedings at the agency level are complete. The settled law is to the contrary.

B. The Factual Basis for Millenium's Argument

As detailed above, there is no legal merit to Millenium's claim that the pendency of administrative mitigation proceedings bars the Government from bringing the instant collection action for liquidated damages. But, in any event, contrary to Millenium's assertions, there are no such mitigation proceedings pending here. *Compare, e.g.*, Def.'s Motion to Dismiss at 8 (asserting that "administrative liquidated damages cases against Millenium remain under active agency consideration," and that "[t]he administrative cases had not concluded at the time Plaintiff commenced this action, and, for that matter, have not yet concluded") *with* Pl.'s Response Brief at 2, 4-6, 9-11 (summarizing chronology of events before the agency, and explaining that neither Millenium nor its surety ever filed application/petition to institute [**27] mitigation proceedings at the administrative level); Pl.'s Supp. Brief at 1-2, 14-15 (same). [12]

12   In its briefs, Millenium repeatedly waffles back and forth as to whether administrative mitigation proceedings were initiated.

Generally, Millenium argues that administrative mitigation proceedings were initiated in a timely fashion and remained pending at least as of the date the Government commenced this action. In addition to the citations provided above, *see, e.g.*, Def.'s Motion to Dismiss at 8 (asserting that "administrative proceedings in this case [have] not been completed"); *id.* (stating that "administrative proceedings remain 'under active agency consideration'"); *Id.* at 9 (asserting that Government here "filed suit prior to the conclusion of administrative liquidated damages proceedings" and "prior to the conclusion of the administrative proceedings against Millenium"); *Id.* at 13 (criticizing Government for "[t]he commencement of this case prior to the . . . conclusion of any substantive proceedings in the underlying administrative liquidated damages cases"); Def.'s Reply Brief at 1 (asserting that administrative mitigation proceedings "are in a 'holding status'"); *Id.* at 11 (referring [**28] to "uncompleted administrative proceedings"); *Id.* (asserting that "the pending liquidated damages administrative proceedings bar [the instant action]"); *Id.* at 13 (contending that allegedly pending "administrative cases have been placed in a 'holding status'"); Def.'s Supp. Brief at 6 (arguing that "there is an administrative proceeding that was commenced and is still pending").

Elsewhere, however, Millenium candidly concedes that mitigation proceedings were never commenced, but seems to suggest that it had some right to do so that was abrogated by the

Government's commencement of this action. *See, e.g.,* Def.'s Motion to Dismiss at 8 (acknowledging that "Millenium has not . . . exercised its express right to file petitions for relief in the administrative cases"); *Id.* at 10 (alleging that Millenium "has not been afforded the opportunity to exercise its right to submit a petition to contest the liquidated damages proceeding"); *Id.* at 11 (asserting that "Millenium withheld the filing of a petition for relief from the liquidated damages cases," and complaining that Customs "did not afford Millenium opportunity to exercise its right to file a petition for administrative relief before . . [**29] . filing this action to collect liquidated damages").

In any event, it is clear beyond cavil that administrative mitigation proceedings could have been initiated only by Millenium or its surety (*not* by Customs), and that mitigation proceedings could have been instituted only by the filing of an appropriate application or petition. *See* 19 C.F.R. ß 172.1(b) (providing that principal or surety may file application/petition for mitigation seeking relief from assessment of liquidated damages); 19 C.F.R. ß 172.11 (stating that application/petition for mitigation should specify facts relied upon by petitioner as grounds for mitigation). And it is undisputed that neither Millenium nor its surety ever filed any such request for relief, even though such an application/petition for mitigation could have been submitted at any time after Millenium's receipt of the Liquidated Damages Notices in 2001. *See* Pl.'s Response Brief at 9; Pl.'s Supp. Brief at 14 n.8.

[*1351] Millenium tries to cast the two letters that the company received from Customs in August and October 2001 as evidence that administrative mitigation proceedings were pending. To the contrary, the two letters reflected nothing more than Customs' [**30] agreement to defer action on the agency's liquidated damages claims against Millenium (*i.e.*, to place them in "a holding status"), awaiting "resolution of [Millenium's] filed protest" contesting Customs' tariff classification of Millenium's merchandise. *See* Def.'s Motion to Dismiss at Exhs. 1, 3. Nothing in either letter even hints at the existence of any pending mitigation proceedings initiated by Millenium or its surety. And it is telling that Millenium itself cannot point to any application or petition for mitigation that it filed with Customs. Nor can Millenium point to any such application or petition filed by its surety.

In short, contrary to Millenium's assertions at various points in its briefs, there are no relevant administrative mitigation proceedings pending at Customs -- and

there never were. As detailed above, however, even if Millenium had commenced administrative mitigation proceedings, the pendency of such proceedings would not have barred the Government from bringing the instant action. [13]

> [13] As the Government notes, "[e]ven if Millenium had availed itself of the opportunity to submit a petition for mitigation . . . , the Government would have had no obligation to actually [**31] resolve that petition prior to filing suit." Pl.'s Supp. Brief at 16 n.10 (citing Cocoa Berkau, 990 F.2d at 615-16; Ataka, 17 CIT at 605, 826 F. Supp. at 501-02; Canex, 32 CIT at 409).

C. The Practical Implications of Millenium's Argument

As explained above, there is no legal merit to Millenium's claim that the doctrine of exhaustion barred the Government from bringing this action to collect liquidated damages. The soundness of that outcome as a matter of law is further reinforced by very practical considerations. Even if the two letters that Millenium and its surety received from Customs in 2001 were to be read to allow Millenium to delay the filing of a petition for mitigation, Customs' letters of May 23, 2005 made it clear to any reader that Customs could no longer afford to wait. *See* Complaint, Exh. 7 (letters to Millenium and surety, dated May 23, 2005). After allowing Millenium's classification litigation to progress, but cognizant of the statute of limitations on the Government's liquidated damages claims, Customs' May 23, 2005 letters explained that the agency would be willing to continue to defer action on the liquidated damages claims and await the outcome of the classification [**32] litigation -- provided that Millenium and its surety executed waivers of the statute of limitations, to preserve the Government's right to pursue its liquidated damages claims if Millenium did not prevail in the classification litigation. *See Id.* The May 23, 2005 letters put both Millenium and its surety on notice that, without executed waivers, the statute of limitations would leave the Government with little choice but to bring a collection action in this court. *See generally* Canex, 32 CIT at 409-10 (concluding that letter from Customs comparable to May 23, 2005 letters here put the plaintiff company in that case on notice of potential legal action by agency, and afforded the company "ample opportunity to execute the statute of limitations waiver or petition for mitigation proceedings as necessary"; ruling that "[the plaintiff company's] argument that it was deprived of the opportunity [to pursue mitigation] . . . is therefore without merit"). [14]

> [14] As the Government notes, even "after the issuance of the [May 23, 2005] letter[s], neither Millenium nor its surety took any action to file a

899 F. Supp. 2d 1340, *; 34 Int'l Trade Rep. (BNA) 2345;
2012 Ct. Intl. Trade LEXIS 154, **; SLIP OP. 2012-153

petition" seeking mitigation - not even in the nearly one-year window between the May 2005 letter [**33] and the commencement of this civil action in mid-April 2006. *See* Pl.'s Response Brief at 10. The Government emphasizes that "[i]f Millenium desired to avail itself of the voluntary, administrative mitigation proceeding, it had the opportunity to do so. It did not." *Id.* Millenium never explains why it did not file a petition seeking mitigation after receiving the May 23, 2005 letter. In fact, Millenium conspicuously avoids addressing the significance of the May 23, 2005 letter in any meaningful sense.

[*1352] Notwithstanding the May 23, 2005 letters, both Millenium and its surety refused to execute waivers. Without such waivers, the Government effectively had no option but to file this action.

Millenium does not dispute that the Government's liquidated damages claims were subject to a six-year statute of limitations. *See* 28 U.S.C. ß 2415. Nor does Millenium seriously dispute that Millenium was in control of whether -- and, if so, when -- to institute administrative mitigation proceedings. Yet Millenium here insists that the Government is precluded from filing an action to collect liquidated damages whenever mitigation proceedings are pending.

As the Government points out, if it had waited to file [**34] suit -- as Millenium argues it was required to do -- the Government would have faced the very real possibility that, as in Cocoa Berkau, the statute of limitations would have barred the liquidated damages claims that are the subject of this action. *See* Pl.'s Response Brief at 2-3, 11; Pl.'s Supp. Brief at 14-16. The scheme that Millenium envisions thus would be patently unworkable.

**IV. Conclusion**

For the reasons set forth above, Millenium's Motion for Judgment on the Pleadings must be denied. A separate order will enter accordingly.

/s/ Delissa A. Ridgway

Delissa A. Ridgway

Judge

Dated: December 18, 2012

New York, New York

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 17th day of July, 2013, I caused this Brief of

Appellant Millenium Distribution Lumber Co. LTD to be filed electronically with

the Clerk of the Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Aimee Lee
Barbara S. Williams
DEPARTMENT OF JUSTICE
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York  10278
(212) 264-9253

Christopher Shaw
U.S. CUSTOMS AND BORDER PROTECTION
6650 Telecom Drive
Indianapolis, Indiana  46278
(317) 614-4418

*Counsel for Appellee*

SANDLER, TRAVIS & ROSENBERG, P.A.
505 Sansome Street, Suite 1475
San Francisco, California  94111
(415) 986-1088

Arthur K. Purcell
SANDLER, TRAVIS & ROSENBERG, P.A.
551 Fifth Avenue, Suite 1100
New York, New York  10176
(212) 549-0131

*Counsel for Appellant XL Specialty Insurance Company*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Appellant Millenium

Distribution Lumber Co. LTD will be hand filed at the Office of the Clerk, United

States Court of Appeals for the Federal Circuit in accordance with the Federal

Circuit Rules.

/s/ Joel R. Junker
*Counsel for Appellant*
  *Millenium Distribution Lumber Co. LTD*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*9,597*] words, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number
    of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
    32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using
    [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state
    name and version of word processing program*] with [*state number of
    characters per inch and name of type style*].

Dated: July 17, 2013                /s/ Joel R. Junker
                                    *Counsel for Appellant*
                                    *Millenium Distribution Lumber Co. LTD*